McDANIEL *v.* TRAYLOR.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF ARKANSAS.

No. 129. Submitted January 16, 1905.—Decided February 20, 1905.

Complainants, who were heirs at law of an intestate leaving real estate the undivided interest of each being valued at over $2,000, and situated within the jurisdiction of the court, filed their bill in the proper Circuit Court of the United States against proper parties, citizens of other States, alleging that defendants had combined to procure and had fraudulently procured orders of the probate court allowing their claims against one of the heirs at law as claims against the intestate whereby such claims became liens upon the intestate's real estate; the claim of each defendant was less than $2,000 but the aggregate amount exceeded $2,000. So far as the allegations of the bill were concerned if any one of the claims was good all were good and the prosecution of one could not be enjoined unless all were enjoined. The bill prayed that the cloud on title of the intestate's real estate be removed by declaring the claims invalid and enjoining proceedings under the judgments of the probate court. The defendants were proceeded against under the act of March 3, 1875, 18 Stat. 470. The Circuit Court dismissed the bill for want of jurisdiction. *Held* error and that

It was competent for the Circuit Court upon the case made by the bill to
    deprive defendants acting in combination of the benefit of the orders
    made in the probate court allowing their respective claims.
In this case the jurisdiction of the Circuit Court does not depend, within
    the judiciary act of 1887, 1888, on the value of complainants' interest in
    the real estate from which the cloud is sought to be removed but on the
    aggregate amount of the liens of all of the defendants' claims which had
    been allowed by the probate court against the intestate's estate pursuant
    to the alleged combination.

THIS was a suit in equity instituted in the Circuit Court of
the United States for the Eastern District of Arkansas by the
appellants, citizens of Arkansas, against the appellees,˙ more
than thirty in number and respectively citizens, corporate and
individual, of Tennessee, New York, Missouri, Illinois, New
Jersey, Connecticut, Ohio and Georgia.

There was a demurrer to the bill by some of the defendants
upon the ground, among others, that the Circuit Court had no
jurisdiction of the parties and subject matter. The demurrer
was sustained, and the bill dismissed for want of jurisdiction.

The question of jurisdiction depends, of course, upon the
allegations of the bill. The case made by the bill is this:

On the thirteenth day of April, 1891, Hiram Evans, a resi-
dent of St. Francis County, Arkansas, died intestate and
possessed of personal property exceeding $12,000 in value.

He was also seized in fee of 760 acres of land of the value
of about $16,000, and left surviving him as his only heirs at
law the three appellants, and three sons, James Evans, William
E. Evans and John Evans.

By an order made April 21, 1891, in the Probate Court of
the county, James Evans was appointed administrator of the
estate of the intestate. Having duly qualified as such, he
took possession of all the assets of the estate and acted as such
administrator until his death.

Among the assets that came to his hands as administrator
was a drug store which with its stock of goods, fixtures, book
accounts and other things therein contained was sold and
delivered by him to John Evans on the first day of May, 1891.

The latter conducted the business in his own name, and while doing so incurred debts and obligations to the defendants in this suit, aggregating $3,000, as well as debts and obligations to other persons, but no single one of his debts exceeded $2,000.

John Evans became insolvent and on May 27, 1892, transferred and delivered to James Evans, administrator of Hiram Evans, the drug store and all that remained of the stock of goods, fixtures and book accounts.

Thereupon, the bill alleged, the defendants herein "conspired, colluded and confederated" together and with John Evans and with James Evans, administrator, to secure the payment of their claims and demands against John Evans out of the assets of the estate of Hiram Evans, deceased, and, "so conspiring and confederating," they presented to the Probate Court their several claims and demands—and James Evans, administrator, fraudulently and illegally approved them—for allowance against the estate of Hiram Evans.

The bill also alleged that the defendants and the administrator of Hiram Evans, still conspiring and confederating together, procured the judgment of the Probate Court establishing their claims against the estate of Hiram Evans by concealing from the court the fact that they were debts and obligations of John Evans and cloaking them under the name of expenses of administration of the said estate, "all of which transactions were part of the same scheme, and were participated in by each and all of the said defendants and by said John Evans and said James Evans, administrator."

It was further alleged: "That the said judgments of said court establishing and allowing the respective claims and demands of the defendants herein against the said estate were wholly the result of the conspiracy and confederation hereinbefore mentioned, and the fraud practiced in pursuance thereof as aforesaid, and are, therefore, in equity and good conscience, void and ineffectual for any purpose whatsoever and ought not to be enforced; but that nevertheless the same are at law liens

upon the real estate hereinbefore described and charges against
the respective interests" of the plaintiffs; that, in.pursuance of
the said conspiracy and confederation, the defendants, and
John Evans and James Evans, concealed from the plaintiffs the
matters and things hereinbefore complained of, and failed to
disclose to them the sale of the drug store to John Evans, and
the fact that the said claims and demands of defendants were
the personal debts and obligations of John Evans; that it had
been determined by the Supreme Court of the State in certain
proceedings relating to the matters here in controversy that
neither the Probate Court nor the state Circuit Court on
appeal had jurisdiction to hear or determine equitable issues,
and that plaintiffs' remedy lay "in an original proceeding in a
court of competent chancery jurisdiction, and that the said
action and ruling of the said Supreme Court was without
prejudice to your orators' beginning and maintaining this bill
of complaint."

The bill still further alleged that under the law of Arkansas
the judgment of the Probate Court, allowing and classifying
the demands of defendants, passed beyond the control of that
court at the expiration of the term at which the same was
rendered, and that thereafter it was not within its power to
alter, amend or set aside the same; that the time within which
plaintiffs might have taken an appeal, or have compelled the
administrator to take an appeal from the judgment, had ex-
pired long prior to the time when they acquired knowledge of
the matters and things hereinbefore complained of; that by
reason thereof plaintiffs are wholly without remedy in the
premises unless the relief prayed be granted them; that all the
acts and doings of the defendants toward procuring the said
judgments of the Probate Court were wrongful, fraudulent and
inequitable, and tended to the manifest wrong, injury and
oppression of plaintiffs; and that in equity and good con-
science the defendants ought not to have or enjoy the benefit
or advantage of the said judgments.

The relief prayed was that the judgments of the Probate

Court be set aside and held not to be valid or lawful liens upon or against the real estate herein described, nor upon the right, title or interest therein of the plaintiffs; that the defendants be enjoined from enforcing such judgments or from taking any benefit, profit or advantage by them; and that all the defendants being without the jurisdiction of the Circuit Court, an order be made directing them to be notified of this suit by publication, according to the provisions of the act of Congress of March 3, 1875. 18 Stat. 470.

By the act just referred to it was, among other things, provided: "SEC. 8. That when in any suit, commenced in any Circuit Court of the United States, to enforce any legal or equitable lien upon, or claim to, or to remove any encumbrance or lien or cloud upon the title to real or personal property within the district where such suit is brought, one or more of the defendants therein shall not be an inhabitant of, or found within, the said district, or shall not voluntarily appear thereto, it shall be lawful for the court to make an order directing such absent defendant or defendants to appear, plead, answer, or demur, by a day certain to be designated, which order shall be served on such absent defendant or defendants, if practicable, wherever found, and also upon the person or persons in possession or charge of said property, if any there be; or where such personal service upon such absent defendant or defendants is not practicable, such order shall be published in such manner as the court may direct, not less than once a week for six consecutive weeks; and in case such absent defendant shall not appear, plead, answer, or demur within the time so limited, or within some further time, to be allowed by the court, in its discretion, and upon proof of the service or publication of said order, and of the performance of the directions contained in the same, it shall be lawful for the court to entertain jurisdiction, and proceed to the hearing and adjudication of such suit in the same manner as if such absent defendant had been served with process within the said district; but said adjudication shall, as regards said absent defendant or de-

fendants without appearance, affect only the property which shall have been the subject of the suit and under the jurisdiction of the court therein within such district. . . ." Rev. Stat. Supp., vol. 1, pp. 84, 85; 18 Stat. 470, c. 137.

Upon demurrer to the jurisdiction of the Circuit Court that court dismissed the suit, being of opinion that the value of the matter in dispute was not sufficient to give jurisdiction. *McDaniel* v. *Traylor,* 123 Fed. Rep. 338.

*Mr. G. B. Webster* and *Mr. J. R. Beasley* for appellants:

The bill being for removal of cloud on title the value of the property affected controls. As to nature of the bill see Coke Litt. 100*a;* Black's Law Dict. 214; *Welden* v. *Stickney,* 1 D. C. App. 343; Cooley on Taxation, 542; *Detroit* v. *Martin,* 34 Michigan, 170; *Bissell* v. *Kellogg,* 60 Barb. 629; *Lick* v. *Ray,* 43 California, 83 ; *Ward* v. *Dewey,* 16 N. Y. 531 ; *Byne* v. *Vivian,* 5 Ves. 604 ; *Dull's Appeal,* 113 Pa. St. 516. As to jurisdictional amount involved in such cases, see *Smith* v. *Adams,* 130 U. S. 175; *Simon* v. *House,* 46 Fed. Rep. 317; *Woodside* v. *Ciceroni,* 93 Fed. Rep. 1; *Cowell* v. *Water Supply Co.,* 96 Fed. Rep. 769; *S. C.,* 121 Fed. Rep. 53; *Fuller* v. *Grand Rapids,* 40 Michigan, 395; *Scripture* v. *Johnson,* 3 Connecticut, 211; *Queyrouse* v. *Thibodeaux,* 30 La. Ann. 1114; *Simon* v. *Richard,* 42 La. Ann. 842; *Kahn* v. *Kerngold,* 80 Virginia, 342; *Ayers* v. *Blair,* 26 W. Va. 558.

The value of the property being the test of the jurisdictional amount, the complainants could have proceeded against any of the defendants irrespective of the amount of his claim, and therefore may join all in one bill, unless that would make the bill multifarious, and in this case it does not have that effect. *Fellows* v. *Fellows,* 4 Cow. 682; Story's Eq. Pl. § 271; *Gaines* v. *Chew,* 2 How. 619.

Even though the value of the real estate is not the true test of the amount in controversy, the complainants were entitled to join the several defendants in one bill, and when so joined

the aggregate amount of their claims was the amount in controversy. 1 Pomeroy Eq. Jur., 2d ed., § 269; *Waterworks* v. *Youmans*, L. R. 2 Ch. 8; *Campbell* v. *Mackay*, 1 Myl. & Cr. 603; *Hardie* v. *Bulger*, 66 Mississippi, 577; *De Forrest* v. *Thompson*, 40 Fed. Rep. 375; *Brown* v. *Safe Dep. Co.*, 128 U. S. 403; *N. Y. & N. H. R. R. Co.* v. *Schuyler*, 17 N. Y. 592.

Even if the transactions of which complaint is made were separate as to the several defendants, yet if it is alleged that all were part of the same fraudulent scheme or conspiracy, the bill is not multifarious. *Duff* v. *Bank*, 13 Fed. Rep. 65; *Pullman* v. *Stebbins*, 51 Fed. Rep. 10; *Marshall* v. *Holmes*, 141 U. S. 589; *Shields* v. *Thomas*, 17 How. 3; *Clay* v. *Field*, 138 U. S. 479; *Handley* v. *Stutz*, 137 U. S. 369; *Davis* v. *Schwartz*, 155 U. S. 647; *Illinois Central* v. *Coffery*, 128 Fed. Rep. 770; *Walter* v. *Railroad Co.*, 147 U. S. 370; *Railroad Co.* v. *Walker*, 148 U. S. 392; *Fishback* v. *Telegraph Co.*, 161 U. S. 96; *Bank* v. *Cannon*, 164 U. S. 319 and *Gibson* v. *Shufeldt*, 122 U. S. 27, distinguished.

*Mr. N. W. Norton* for appellees:

Where the bill is to relieve property of a lien or charge, the amount of the lien and not the value of the property is the test of jurisdiction. *Ross* v. *Prentiss*, 3 How. 771; *Carne* v. *Russ*, 152 U. S. 250; *Farmers' Bank* v. *Hoop*, 7 Pet. 168; *Peyton* v. *Robertson*, 9 Wheat. 527; *Gibson* v. *Shufeldt*, 122 U. S. 27.

Separate cases cannot be combined to make up the jurisdictional amount. *Walter* v. *Railroad Co.*, 147 U. S. 370; *Slaver* v. *Bigelow*, 5 Wall. 208; *Russell* v. *Stansell*, 105 U. S. 303; *Trust Co.* v. *Waterman*, 106 U. S. 265; *Hawley* v. *Fairbanks*, 108 U. S. 543; *Stewart* v. *Dunham*, 115 U. S. 61; *Clay* v. *Field*, 138 U. S. 464.

The bill is against persons who must respond severally to the plaintiffs if at all and neither of the judgments is for as much as $2,000. The claims were all separate and cannot be united in one action without making it multifarious.

MR. JUSTICE HARLAN, after making the foregoing statement, delivered the opinion of the court.

If, within the meaning of the judiciary act of 1887, 1888, the value of the matter in dispute exceeded the sum of two thousand dollars, exclusive of interest and costs (25 Stat. 433), then there was no reason for dismissing the bill for want of jurisdiction in the Circuit Court; for, diversity of citizenship was shown by the bill, and under the above act of March 3, 1875, c. 137, 18 Stat. 470, it was competent for the Circuit Court, by a final decree, to remove any encumbrance or lien or cloud upon the title to real or personal property within the district, as against persons not inhabitants thereof and not found therein, or who did not voluntarily appear in the suit.

The lands of which Hiram Evans died possessed were of the alleged value of $16,000, and we assume that the plaintiffs jointly owned one undivided half of them. Was the value of the joint interest of the plaintiffs in the lands in question to be deemed the value of the matter in dispute, or was the Circuit Court without jurisdiction if no one of the alleged fraudulent claims held by the defendants exceeded two thousand dollars, exclusive of interest and costs?

Some light will be thrown upon this question by certain cases in which this court held it to be competent for a Circuit Court, in a suit in equity, to deprive parties of the benefit of a judgment or order fraudulently obtained by them in a state court.

In *Johnson* v. *Waters*, 111 U. S. 640, 667, the question was as to the authority of a Circuit Court to set aside as fraudulent and void certain sales made by a testamentary executor under the orders of a Probate Court. Conceding that the administration of the estate there in question properly belonged to the Probate Court, and that in a general sense its decisions were conclusive, especially upon parties, Mr. Justice Bradley, speaking for this court said: "But this is not universally true. The most solemn transactions and judgments may, at the

instance of the parties, be set aside or rendered inoperative for fraud. The fact of being a party does not estop a person from obtaining in a court of equity relief against fraud. It is generally parties that are the victims of fraud. The Court of Chancery is always open to hear complaints against it, whether committed *in pais* or in or by means of judicial proceedings. In such cases the court does not act as a court of review, nor does it inquire into any irregularities or errors of proceeding in another court; but it will scrutinize the conduct of the parties, and if it finds that they have been guilty of fraud in obtaining a judgment of decree, it will deprive them of the benefit of it, and of any inequitable advantage which they have derived under it."

In *Arrowsmith* v. *Gleason*, 129 U. S. 86, 98, the question was whether the Circuit Court had jurisdiction by its decree to set aside a sale of an infant's lands fraudulently made by his guardian under authority derived from a Probate Court, and give such relief as would be consistent with equity. One of the grounds of demurrer to the bill in that case was that the Circuit Court had no authority to set aside and vacate the orders of the state court. This court said: "If by this is meant only that the Circuit Court cannot by its orders act directly upon the Probate Court, or that the Circuit Court cannot compel or require the Probate Court to set aside or vacate its own orders, the position of the defendants could not be disputed. But it does not follow that the right of Harmening, in his lifetime, or of his heirs since his death, to hold these lands, as against the plaintiff, cannot be questioned in a court of general equitable jurisdiction upon the ground of fraud. If the case made by the bill is clearly established by proof, it may be assumed that some state court, of superior jurisdiction and equity powers, and having before it all the parties interested, might afford the plaintiff relief of a substantial character. But whether that be so or not, it is difficult to perceive why the Circuit Court is not bound to give relief according to the recognized rules of equity, as administered in the courts of the

United States, the plaintiff being a citizen of Nevada, the defendants citizens of Ohio, and the value of the matter in dispute, exclusive of interest and costs, being in excess of the amount required for the original jurisdiction of such courts." "While there are general expressions in some cases apparently asserting a contrary doctrine, the later decisions of this court show that the proper Circuit Court of the United States may, without controlling, supervising, or annulling the proceedings of state courts, give such relief, in a case like the one before us, as is consistent with the principles of equity."

After citing the case of *Johnson* v. *Waters*, above, the court referred to *Reigal* v. *Wood*, 1 Johns. Ch. 402, 406, in which Chancellor Kent said: "Relief is to be obtained not only against writings, deeds, and the most solemn assurances, but against judgments and decrees, if obtained by fraud and imposition." It also referred to *Bowen* v. *Evans*, 2 H. L. Cas. 257, 281, in which Lord Chancellor Cottenham said: "If a case of fraud be established, equity will set aside all transactions founded upon it, by whatever machinery they may have been effected, and notwithstanding any contrivances by which it may have been attempted to protect them. It is immaterial, therefore, whether such machinery and contrivances consisted of a decree of a court of equity, and a purchase under it, or of a judgment at law, or of other transactions between the actors in the fraud." The opinion of this court concluded: "These principles control the present case, which, although involving rights arising under judicial proceedings in another jurisdiction, is an original, independent suit for equitable relief between the parties, such relief being grounded upon a new state of facts, disclosing not only imposition upon a court of justice in procuring from it authority to sell an infant's lands when there was no necessity therefor, but actual fraud in the exercise, from time to time, of the authority so obtained. As this case is within the equity jurisdiction of the Circuit Court, as defined by the Constitution and laws of the United States, that court may, by its decree, lay hold of the parties and compel

them to do what, according to the principles of equity, they ought to do, thereby securing and establishing the rights of which the plaintiff is alleged to have been deprived by fraud and collusion."

· In *Marshall* v. *Holmes*, 141 U. S. 589, 595, 596, it appeared that twenty-three judgments for different amounts were fraudulently procured to be rendered in a state court against a citizen of another State. Upon learning of the judgments the latter brought suit in one of the courts of Louisiana for a decree avoiding them as obtained upon false testimony, and thereafter filed a petition and bond for the removal of the case to the Circuit Court of the United States. The right of removal was denied, and the court dissolved the preliminary injunction which had been granted, and authorized Mayer, who had become the owner of the judgments, to proceed in their collection. Upon appeal to a higher state court, the original judgment was affirmed, and that judgment was brought here for review by writ of error. This court sustained the right of removal. After stating that the judgments aggregated more than three thousand dollars and were all held by Mayer and against the plaintiff, we said: "Their validity depends upon the same facts. If she is entitled to relief against one of the judgments, she is entitled to relief against all of them. The cases in which they were rendered were, in effect, tried as one case, so far as she and Mayer were concerned; for the parties stipulated that the result in each one not tried should depend upon the result in the one tried. As all the cases not tried went to judgment in accordance with the result in the one tried; as the property of Mrs. Marshall [the plaintiff] was liable to be taken in execution on all the judgments; as the judgments were held in the same right; and as their validity depended upon the same facts, she was entitled, in order to avoid a multiplicity of actions, and to protect herself against the vexation and cost that would come from numerous executions and levies, to bring one suit for a decree finally determining the matter in dispute in all the cases.

And as, under the rules of equity obtaining in the courts of the United States, such a suit could be brought, the aggregate amount of all the judgments against which she sought protection, upon grounds common to all the actions, is to be deemed, under the act of Congress, the value of the matter here in dispute."

The question of jurisdiction here presented arises out of facts not to be found in any case brought to our attention or of which we have knowledge.

The suit is to remove a cloud on the title to certain lands of the value of $16,000. The plaintiffs, being three of the six heirs at law of the intestate, jointly own an undivided interest of one-half of those lands, but no interest in any particular part of them. If the value of their joint undivided interest, $8,000, or the value of the undivided interest of each (one-third of $8,000), is to be taken as the value of the matter in dispute, then the Circuit Court had jurisdiction. But we are of opinion that within the meaning of the judiciary act of 1887, 1888, the jurisdiction of the Circuit Court, in this case, depended upon the value in dispute measured by the aggregate amount of the claims of the defendants.

It is contended that the jurisdiction of the Circuit Court must fail, because no one defendant has a claim of the required jurisdictional amount. In support of this contention several cases are cited of the class to which *Waller* v. *Northeastern Railroad Co.*, 147 U. S. 370, 372, 373, belongs. That was a suit by a railroad company against the treasurers and sheriffs of several counties through which its road passed, to enjoin them—separately, of course—from issuing executions against or seizing the property of the company for the purpose of collecting a tax based upon an assessment alleged to be unconstitutional and void. The court said: "It is entirely clear that, had these taxes been paid under protest and the plaintiff had sought to recover them back, it would have been obliged to bring separate actions in each county. As the amount recoverable from each county would be different, no joint

judgment could possibly be rendered. So, had a bill for injunction been filed in a state court, and the practice had permitted, as in some States, a chancery subpœna to be served in any county of the State, these defendants could not have been joined in one bill, but a separate bill would have had to be filed in each county. . . . It is well settled in this court that when two or more plaintiffs, having several interests, unite for the convenience of litigation in a single suit it can only be sustained in the court of original jurisdiction, or on an appeal in this court, as to those whose claims exceed the jurisdictional amount; and that when two or more defendants are sued by the same plaintiff in one suit, the test of jurisdiction is the joint or several character of the liability to the plaintiff."

The case before us, however, is presented by the bill in an entirely different aspect. The case may be regarded as exceptional in its facts, and may be disposed of without affecting former decisions. There is no dispute as to the amount of any particular claim. So far as the bill is concerned, if any one of the specified claims is good against the estate of Hiram Evans, then all are good; if the lands in question, or any interest in them, can be sold to pay one claim, they must be sold to pay all. The court could not, under the bill, enjoin the prosecution of one claim and leave the others untouched. The matter in dispute is whether the lands in which the plaintiffs have a joint undivided interest of one-half can be sold to pay *all* the claims, *in the aggregate,* which the defendants, by *combination and conspiracy*, procured the Probate Court to allow against the estate of Hiram Evans. The essence of the suit is the alleged fraudulent combination and conspiracy to fasten upon that estate a liability for debts of John Evans, which were held by the defendants and which they, acting in combination, procured, in coöperation with James Evans, to be allowed as claims against the estate of Hiram Evans. By reason of that combination, resulting in the allowance of all those claims in the Probate Court, as expenses of administering the estate of

Hiram Evans, the defendants have so tied their respective claims together as to make them, so far as the plaintiffs and the relief sought by them are concerned, *one* claim. The validity of all the claims depends upon the same facts. The lien on the lands which is asserted by each defendant has its origin as well in the combination to which all were parties as in the orders of the Probate Court which, in furtherance of that combination, were procured by their joint action. Those orders were conclusive against the plaintiffs, as to all the claims, if the claims could be allowed at all against the estate of Hiram Evans. A comprehensive decree by which the plaintiff can be protected against those orders will avoid a multiplicity of suits, save great expense and do justice. If the plaintiffs do not prove such a combination and conspiracy, in respect, at least, of so many of the specified claims as in the aggregate will be of the required amount, then their suit must fail for want of jurisdiction in the Circuit Court; for, in the absence of the alleged combination, the claim of each defendant must, according to our decisions, be regarded, for purposes of jurisdiction, as separate from all the others.

An instructive case on the general subject is *Shields* v. *Thomas,* 17 How. 3. That was a suit in equity in a Kentucky state court in which the plaintiffs, as the legal representatives of an intestate, sought a decree for certain proportionate amounts alleged to be due them respectively from the defendant, who had married the widow and thereby obtained possession of the property of the deceased. The defendant was charged with having converted to his own use a large amount of the intestate's property to which the legal representatives of the intestate, plaintiffs in the suit, were entitled. In that suit a decree was rendered against the defendant for a large sum of money, "the shares of the respective complainants being apportioned to them in the decree," and the defendant being required by the decree to pay to each of the plaintiffs the specific sum to which he was entitled as his portion of the property misappropriated by him. Subsequently a suit was

brought in a Circuit Court of the United States (jurisdiction being based on diversity of citizenship), to enforce the decree rendered in the Kentucky state court, and to compel the defendant to pay to the plaintiffs, respectively, the several sums which had been decreed in their favor. A decree to that effect was rendered. The whole amount which the defendant was required by the decree to pay was large enough to give this court jurisdiction on appeal, although the specific sum awarded to each plaintiff was less than the jurisdictional sum. The defendant appealed to this court, and a motion was made to dismiss the appeal on the ground "that the sum due to each complainant is severally and specifically decreed to him; and that the amount thus decreed, is the sum in controversy between each representative and the appellant, and not the whole amount for which he has been held liable." ·

After observing that if that view of the matter in controversy was correct, this court was without jurisdiction, Chief Justice Taney, speaking for the court, said: "'But the court think the matter in controversy, in the Kentucky court, was the sum due to the representatives of the deceased collectively, and not the particular sum to which each was entitled, when the amount due was distributed among them, according to the laws of the State. They all claimed under one and the same title. They had a common and undivided interest in the claim; and it was perfectly immaterial to the appellant how it was to be shared among them. He had no controversy with either of them on that point; and if there was any difficulty as to the proportions in which they were to share, the dispute was among themselves, and not with him.

"It is like a contract with several to pay a sum of money. It may be that the money, when recovered, is to be divided between them in equal or unequal proportions. Yet if a controversy arises on the contract, and the sum in dispute upon it, exceeds two thousand dollars, an appeal would clearly lie to this court, although the interest of each individual was less than that sum.

" This being the controversy in Kentucky, the decree of that court, apportioning the sum recovered among the several representatives, does not alter its character when renewed in Iowa. So far as the appellant is concerned, the entire sum found due by the Kentucky court is in dispute. He disputes the validity of that decree, and denies his obligation to pay any part of the money. And if the appellees maintain their bill, he will be made liable to pay the whole amount decreed to them. This is the controversy on his part; and the amount exceeds two thousand dollars. We think the court, therefore, has jurisdiction on the appeal."

The doctrines of *Shields* v. *Thomas* have been frequently recognized by this court. In the recent case of *Overby* v. *Gordon*, 177 U. S. 214, 218, the court, interpreting the decision in that case, said: "It was held that where the representatives of a deceased intestate recover a judgment against an administrator for an amount in excess of the sum necessary to confer jurisdiction to review, and such recovery was had under the same title and for a common undivided interest, this court had jurisdiction, although the amount decreed to be distributed to each representative was less than the jurisdictional sum." See also *The Connemara*, 103 U. S. 754; *Handley* v. *Stutz*, 137 U. S. 366; *New Orleans Pacific Ry.* v. *Parker*, 143 U. S. 42, 51; *Texas & Pacific Ry. Co.* v. *Gentry*, 163 U. S. 353, 361; *Davis* v. *Schwartz*, 155 U. S. 631, 647.

It is said that as to any single one of the claims in question the plaintiffs in the present case could have released the lands in which they had an undivided interest, by paying that particular claim; therefore, it is argued, the value of the matter in dispute, as between the plaintiffs and such defendant, was the amount of the latter's claim. And so as to each separate claim. But that same thing could have been said as to the respective claims involved in *Shields* v. *Thomas*. The defendant there could have paid off any of the respective claims involved. This court, however, held that fact to be immaterial because the defendant disputed the validity of the

original decree holding him liable for all the claims, and had no concern as to how the whole amount decreed against him was to be distributed.   So here, the plaintiffs suing to protect their common undivided interest in lands put in peril by fraudulent orders obtained by the defendants acting in combination to obtain such orders for their benefit, are only concerned in preventing the defendants from proceeding under the orders of the Probate Court, which they procured for their benefit equally, and under which they all now equally claim. The plaintiffs made no contest as to particular claims.   They dispute all of them as claims against Hiram Evans' estate. If the orders of the Probate Court stand for the benefit of the respective defendants, then the plaintiffs' interests in the lands are liable for all the claims asserted by the defendants; for there is no dispute here as to the amount of any particular claim.   Hence, as we have said, the value of the matter in dispute is the aggregate amount of the claims fraudulently procured by the defendants acting in combination to be allowed in the Probate Court as claims against the estate of Hiram Evans.

For the reasons stated we hold: 1. That it was competent for the Circuit Court upon the case made by the bill to deprive the defendants, acting in combination and claiming the benefit of the orders made in the Probate Court allowing their respective claims.   2. That the value of the matter in dispute in the Circuit Court was the aggregate amount of all the claims so allowed against the estate of Hiram Evans.

The decree is reversed with directions to set aside the order dismissing the suit for want of jurisdiction, to overrule the demurrer, and for further proceedings as may be consistent with this opinion and with the law.

*Reversed.*