## BINSFIELD et al. (CONRAD MINERALS CO. et al., Interveners) v. JOHNSON et al.

### No. 1492.

District Court, D. Montana.

Feb. 26, 1934.

M. S. Gunn, of Helena, Mont., for plaintiffs.

Murch & Wuerthner, I. Parker Veazey, Jr., and Molumby, Busha & Greenan, all of Great Falls, Mont., and W. T. Pigott, of Helena, Mont., for intervener Jos. Wright.

R. J. Reynolds, of Great Falls, Mont., for intervener Conrad Minerals Co.

R. J. Reynolds, I. Parker Veazey, Jr., and Molumby, Busha & Greenan, all of Great Falls, Mont., and W. T. Pigott, of Helena, Mont., for interveners Jonas F. Reitz and others.

John G. Brown, L. V. Ketter, and John C. Erickson, all of Helena, Mont., and W. F. O'Leary, of Great Falls, Mont., for defendants.

BOURQUIN, District Judge.

Defendants' motions to dismiss, in legal effect, admit the allegations of the complaint, and in consequence the case is as follows.

In Great Falls the Conrad State Bank, insolvent to a degree requiring enforcement in full of stockholders' "double liability," closed March 4, 1933, and defendant Frank H. Johnson, superintendent of banks, with his aids proceeded to liquidate it.

The usual depositors' committee materialized, and procured 93 per cent. of depositors to sign a plan to reorganize and reopen, but the plan failed. Thereupon, without any new mandate or authority the committee, in confederacy with the superintendent and certain stockholders of Conrad, formulated another plan following, viz.:

The Montana State Bank would be organized of 1,000 shares of $100 each, for which some of Conrad's stockholders would subscribe and pay $125,000. Payment would be $45,000 money, of which defendant Bremer

would pay $25,000, and release of Bremer's claim against Conrad for $80,000. Thereupon the superintendent, who theretofore had assessed Conrad stockholders' full liability and collected some of it, out of Conrad assets would pay the $80,000 to Montana, and release all liability of Conrad stockholders subscribing for Montana stock.

Bremer owned 1,735 of Conrad's 2,500 shares of $100 each, and subscribed for 840 shares of Montana. His claim aforesaid was for money paid by him to Conrad many months before it closed, in compliance with the superintendent's order to make good impaired capital.

Bremer would pay Carley's note for $16,-000 to Conrad, and secure payment of any balance unpaid of Armada's note for $44,500 to Conrad. Armada was of Conrad stockholders, and the usual affiliate to "do the dirty work" and afford an alibi.

And Bremer's Montana shares would be trusteed, to be returned to him September 1, 1938, save to any extent necessarily applied to pay in full Conrad depositors. Furthermore, Bremer's performance would release the liability of defendant G. J. Johnson in respect to his 109 shares of Conrad stock.

The superintendent would transfer the better and liquid assets of Conrad, including more than $89,000 money and in amount $439,417 minimum value, to Montana. Upon its books Montana would credit to Conrad public depositors, 100 per cent. in amount $55,054, to Conrad private depositors, 50 per cent. in amount $377,050, of $754,100, and pay the same on demand.

A Conrad stockholder, defendant Larson, would be president of Montana, one of the superintendent's aids, defendant Sauer, would be its vice president and cashier, and both with another Conrad stockholder would be of Montana's board of five directors. This plan as "fair and just" to assist liquidation and to make "available as speedily as possible not less than 50%" to creditors, the superintendent recommended to the local court, which approved it, and execution followed.

Within six days after the approval, the superintendent transferred Conrad assets to Montana, on collection of some of them Montana realized a profit of $8,410, had $319,442 money and $246,073 in other form of said assets, and opened for business; and as agreed it paid to Conrad depositors including plaintiffs.

The superintendent retained "unacceptable assets" of Conrad of "book value" $750,-000, for liquidation.

In Great Falls are two national banks, and the superintendent will permit but one state bank, the latter for that reason part of a valuable monopoly.

Jurisdiction of the suit is based on diverse citizenship; plaintiffs who sue in behalf of all, and interveners, are depositors of Conrad, and defendants are the superintendent and his aids, the banks, and some the latter's stockholders and officers.

The relief sought is accounting and restitution.

That is to say, the suit is the familiar proceeding by cestuis que trustent against trustees and participants to constrain them to account and respond in respect to property misappropriated in breach of trust.

The motions to dismiss are for that (1) there is not jurisdiction of the subject-matter, and (2) the facts alleged do not constitute a cause of action.

Montana has the usual banking code, which invests the superintendent with usual broad powers. 20 Sess. ch. 89. Amongst other things, he is authorized "with the consent of the court having jurisdiction of such liquidation to compromise, settle and compound claims for stockholders' liability and such settlements and compromises when approved by the court shall be legal and binding upon all parties concerned including creditors."

The proceeding is administrative rather than judicial, and ex parte; for although notice to the bank is prescribed in respect to compromise of debts to or claims by the bank and sale of assets of the bank, stockholders' liability is not of either category.

In support of their motions defendants contend that the superintendent's acts approved as aforesaid are closed to judicial inquiry, and that plaintiffs are estopped by accepting payment from Montana.

■■ Conrad's assets and its stockholders' liability are a trust fund for its depositors and stockholders as beneficiaries, and thereof the superintendent is statutory trustee. His obligation is that of all trustees, statutory or not, to administer the trust with utmost honesty and good faith, reasonable skill, diligence, and discretion in behalf (1) of the depositors, and (2) of the stockholders. And for his failure to the damage of any beneficiaries, like any trustee he can be summoned by them to account.

■ Of this duty no statute can relieve him; of this right no statute can deprive them. Whatever the intent of the code wherein it

provides that the court's approval "shall be legal and binding" upon creditors, it is impotent to deprive them of a remedy against a defaulting superintendent-trustee, lacking as it does the due process assured by the Constitution, state and national.

The superintendent's duty to depositors is primary, to stockholders is secondary.

Until depositors are paid with interest in full, not a nickel of the trust funds can he legally divert to stockholders, nor can he legally for a single day hinder and delay payment to depositors in order to benefit stockholders.

Does he proceed illegally in either respect aforesaid, it is fraudulent in law, and for any damage in consequence to depositors, he and any benefiting by the fraud are bound to account.

And though the court approves, the illegal is not made legal, the fraudulent transaction is not purified, the depositors are not debarred of their remedy. Even a judgment to like end would not protect him, and the order of approval of less dignity is so far a nullity it may be ignored.

It suffices to invoke equity to wrest the fruits of the fraud from those who received them, and/or to charge the trustee's account therewith in any court securing jurisdiction of their persons. See McDaniel's Case, 196 U. S. 415, 25 S. Ct. 369, 49 L. Ed. 533; Smith v. Smith (C. C. A.) 224 F. 1. See, also, First, etc., Bank v. Flershem, 290 U. S. 504, 54 S. Ct. 298, 78 L. Ed. 465, Jan. 8, 1934. Northern, etc., Co. v. Boyd, 228 U. S. 482, 33 S. Ct. 554, 57 L. Ed. 931.

These general, familiar, and comprehensible principles in mind, it prima facie appears has been abuse of the trust to the damage of the depositors-beneficiaries, and that this court has jurisdiction to grant the accounting demanded.

It was the duty of the superintendent to liquidate and pay depositors, and without reasonable explanation or cause he shifted it to Conrad stockholders and their alter ego Montana, to their enormous gain and to depositors' equal loss.

To said stockholders and bank he transferred assets of Conrad depositors as follows:

| | |
|---|---:|
| By release of stockholders' liability | $250,000 |
| By assets to Montana | 439,417 |
| By payment to Bremer | 80,000 |
| Total | $769,417 |

In return the depositors received payments as follows:

| | |
|---|---:|
| Public depositors | $ 55,054 |
| Private depositors | 377,050 |
| Total | $432,104 |

Balance struck, the loss to depositors and gain to stockholders is $337,313.

In so far as the stockholders' liability is concerned, to contend any of it was paid is ridiculous, offensive to average intelligence, and a subterfuge that outrages equity. The stockholders paid nothing. They merely shifted their money from one their breeches pockets to the other.

The $80,000 paid by the superintendent to or for Bremer was without a substantial shadow of right. The records of Conrad in the superintendent's possession, to say nothing of his official records, demonstrated Bremer's claim was mere fiction. And if Bremer's payment of and subrogation to Cleary's note and any unpaid balance of Armada's was any benefit to the depositors, it does not appear in plan or recommendation.

As for Bremer's Montana stock trusteed for the depositors, long before the date for its contingent application it may be a liability instead of an asset—will be, if Bremer is no more successful with Montana than he was with Conrad. In any event, it is part of the plan to hinder and delay and so to defraud depositors, and avails defendants nothing.

It is no defense to misappropriation of trust funds that the wrongdoer speculates with them, invests them in stock to some time be at the disposal of the beneficiaries.

Likewise, that the superintendent yet has $750,000 "unacceptable assets" that ultimately "might pay all depositors in full." They are not obligated to stand still until limitations have run, or at all.

In sum, it is transparent the plan by the superintendent imposed upon the court was to benefit stockholders and hinder and delay depositors, was Bremer's plan, the plan of Conrad stockholders, by Conrad stockholders, for Conrad stockholders.

It compromised nothing but the defendants, settled nothing but the depositors' hash.

There is nothing to account for it but an irresistible inference of defendants' collusion to illegally profit by the trust as at least some of them did. Even one of the defendant superintendent's aids secured a share, an office in Montana.

No estoppel appears. Plaintiffs got nothing but their own money illegally transferred to Montana, and at the only place the superintendent arranged for payment.

32

As in any trust, the plaintiffs are entitled to accounting if only to be enlightened in respect to questionable transactions by the superintendent, the burden his to disclose and justify.

The motions to dismiss are denied.

The rules allow five days after notice to answer.

■ In the matter of plaintiffs' motions to substitute counsel, they are granted.

Be a plaintiff not a representative of the court, as is a receiver, his right to substitute counsel not otherwise interested in the case, at any time, for any or no reason, cannot be denied.

In . class suits the rule is not otherwise. For although plaintiffs' counsel therein generally is conceded right to control the suit, the court if necessary will guard against any prejudice to interveners and their counsel. And to that end, interveners must be given notice of all proceedings. Indeed, in a class suit the interveners seeking relief the same as plaintiffs are themselves plaintiffs to all intents and purposes.