## AMERICAN OPTOMETRIC ASS'N v. RITHOLZ et al.

### No. 6615.

Circuit Court of Appeals, Seventh Circuit.
Feb. 10, 1939.

Rehearing Denied March 21, 1939.

Clarence T. Morse, of Chicago, Ill. for appellants.

John J. Yowell and Ross Langdon, both of Chicago, Ill., and Harold Kohn, of New York City, for appellee.

Before SPARKS and TREANOR, Circuit Judges, and LINDLEY, District Judge.

TREANOR, Circuit Judge.

Plaintiff-appellee brought this suit in the District Court to enjoin defendants, appellants here, from prosecuting allegedly vexatious actions at law and suits in equi-

ty. The prayer was for an injunction and general relief. The trial court made findings of fact supporting substantially all the allegations of the complaint and entered a perpetual injunction against the defendants and rendered judgment in favor of the plaintiff and against defendants for damages in the sum of $4,000. The defendants-appellants have appealed from the order of injunction and the judgment for damages.

The plaintiff is a non-profit association of optometrists incorporated in the state of Ohio. State associations of optometrists in 47 states are affiliated with it and its total membership numbers about 6,000 individuals. The purposes of plaintiff, as set forth in its articles of incorporation are "uniting the reputable optometrists; to improve the science and art of optometry; to elevate its standards; and eventually to restrict the practice of optometry to properly qualified optometrists."

The defendants herein are engaged in the business of selling optical goods, and they operate under numerous trade names. Each defendant is a citizen of Illinois and the present action is based jurisdictionally on diversity of citizenship.

The plaintiff, from time to time, has assisted governmental agencies in their efforts to investigate practices of the defendants. In 1921 the Federal Trade Commission issued an order to defendant Benjamin Ritholz to cease and desist from certain fraudulent representations. In 1921, 1922, 1923, and 1928 the United States Postoffice Department charged the defendants with using the mails to defraud and on each occasion an agreement was entered into for cessation of such conduct. In 1930 the Federal Trade Commission entered another cease and desist order against four of the six defendants, and in 1932 and 1934 the Postoffice Department took administrative steps against defendants for mail fraud. In 1934 the Federal Trade Commission took proceedings against defendants and found that defendants made guarantees which they habitually refused to perform; that in proceedings by the United States Postoffice Department it was learned that there were 7,000 claims based on defendants' guarantee of refunding the purchase price which were rejected; that certain spectacles sold by defendants were gravely injurious to the eyes; that a substantial number of the lenses sold by defendants were ground from window glass, though satisfactory lenses can be ground only from "crown glass." The Federal Trade Commission issued another cease and desist order on the basis of the foregoing findings.

In 1935 the Postmaster General issued an order finding that defendants, under 19 trade names, were engaged in a scheme to obtain money by fraudulent use of the mail. In 1937 the Federal Trade Commission filed a complaint charging defendants with false representations and this matter was pending at the time of the filing of the instant suit.

The foregoing facts are material to plaintiff's cause for the reason that its bill in equity alleges that the defendants, finding their unlawful activities constantly thwarted by federal and state action in which plaintiff cooperated, are engaged in a plan and conspiracy to unlawfully, maliciously, and fraudulently vex and harass the plaintiff by bringing a multitude of groundless actions in different jurisdictions against plaintiff.

It is undisputed that defendants filed seven suits against plaintiff, its officials, affiliates and members in the state courts of Indiana, Illinois, and Nebraska, in the federal courts of Nebraska, Minnesota and in Canada. The gravamen of all of these actions was that the present plaintiff was seeking to ruin defendants' business by unlawful acts, such as libeling defendants, intimidating employees, "unlawfully employing detectives and snoopers," intimidating and unlawfully inducing newspapers and radio stations not to accept defendants' advertising, and by other similar acts. The total of damages claimed by defendants in such actions aggregated $450,000.

The plaintiff's evidence in the instant case amounts to a categorical denial of the defendants' charges of unlawful acts upon which the foregoing suits of the defendants are predicated.

In addition to the above seven actions the defendants filed an action seeking to enjoin plaintiff from doing business in Illinois, alleging in part that by lobbying, litigation, and propaganda the present plaintiff was seeking to impede or destroy defendants' business in violation of plaintiff's charter. The defendants filed another action against plaintiff's president charging that a certain company, not a party to the suit, was manufacturing and selling a certain massaging device, at the

suggestion of plaintiff's president, and that, on grounds not disclosed, the manufacture and sale of same was in violation of law.

Also the defendants issued and served numerous notices of depositions to be taken and caused to be issued and served numerous subpoenas duces tecum.

In 1937, 19 years after plaintiff's incorporation, a company was incorporated in Illinois having the same identical name as plaintiff, having the same stated objects, and the first 24 words of the stated objects were identical with those of plaintiff. The named incorporators were three employees of the defendants; the articles were sworn to before an employee of defendants, and the address of the corporation was the address of defendants' attorney. Plaintiff produced two of the three incorporators at the trial below, being unable to find the third, and the two were ignorant of the affairs of the new corporation other than that they knew that they had signed the articles of incorporation.

The District Court found that defendants caused the aforesaid corporation to be organized as a colorable imitation of plaintiff for the purpose of deception and fraud on the public and on optometrists, and to injure and defraud and damage plaintiff. The court also found that all of the actions instituted by defendants against plaintiff were groundless, were not brought in good faith, were wilful, vexatious and malicious and for the purpose of vexing, harassing and injuring plaintiff.

The decree enjoining further prosecution of the actions followed the findings; and the judgment for $4,000 followed the finding of the court that plaintiff had been required to pay out that sum in defending the actions enjoined.

The grounds relied upon for reversal are as follows:

1. The evidence does not support the finding.

2. Federal jurisdiction did not exist because the amount in controversy, exclusive of interest and cost, did not exceed $3,000.

3. Section 265 of the Judicial Code, 28 U.S.C.A. § 379, precluded the enjoining of actions in state courts.

4. The money decree of $4,000 damages was improper.

■■■ With regard to the sufficiency of the evidence we are of the opinion that it cannot be said that there was no substantial evidence to support finding No. 19 upon which the order of injunction rests.[1] Evidence introduced on behalf of plaintiff negatived the truth of the charges made by defendants in their various suits and disclosed facts which were sufficient to justify the inference that the defendants were actuated by malice. The credibility of plaintiff's evidence and the weight to be given circumstantial or indirect evidence was a matter for the fact finding tribunal. The circumstances of defendants' appropriation of plaintiff's name and objects and the fact that plaintiff could have been proceeded against in one suit in Ohio, the state of its incorporation, cannot be said to have been without significance.

Defendants urge that they have satisfactorily explained the reason for not bringing a single action in Ohio against the plaintiff on the ground that they could not obtain service on the other parties associated with defendants, and point out that in some instances they brought actions where the plaintiff was holding a convention so that they might get service on the delegates. As against this it appears that when the Federal District Court in Minnesota quashed a service as to the present plaintiff the case was dismissed as to all co-defendants of the present plaintiff. This conduct tended to indicate that it was the plaintiff association which was the object of defendants' suits. The activities of the plaintiff corporation necessarily were carried on through its officers and members; but any objectionable conduct could be reached in one suit for injunction and damages against the plaintiff alone. Defendants' explanation is not sufficient to destroy probative value of the circumstances which, the plaintiff contends, support the inference that these various suits were brought in different jurisdictions for the purpose of harassing the plaintiff and destroying its

---

[1] (Finding No. 19) "All of the proceedings instituted and carried on against plaintiff by defendants, described in the foregoing findings were groundless, not commenced or carried on in good faith and such proceedings, the threats made by the defendant Benjamin Ritholz, the sending out of letters to officers, directors and members of the plaintiff and the incorporation in Illinois of American Optometric Association were wilful, vexatious and malicious and for the purpose of vexing, harassing and injuring the plaintiff."

effectiveness. The circumstances strongly tend to show that a part of the plan of the defendants was to weaken the plaintiff association by discouraging support of its members by threatening to make, and by actually making, them parties to law suits.

It is our opinion that the evidence is sufficient to justify the court's finding of facts.

Defendants urge that plaintiff did not establish that the loss which would follow if plaintiff did not obtain injunctive relief would exceed $3,000. The present case is a suit to enjoin the defendants from prosecuting malicious and groundless actions which are alleged to have been brought as a result of a single fraudulent conspiracy, and in such a suit the amount in controversy is the aggregate sum of the amounts claimed in the actions sought to be enjoined. Defendants apparently recognized this as a correct statement of the rule declared in cases of the Supreme Court; but urge a distinction on the ground that in those cases the amounts which were claimed in the separate cases were undisputed while in the instant case the plaintiff has not conceded that defendants would recover the amounts claimed if the actions should be permitted to proceed to final judgment. But we fail to find any such distinction made in the Supreme Court cases. In such cases one of the material considerations relied upon by a plaintiff who is seeking to enjoin the prosecution of actions is that such actions are groundless; and, consequently, there is no concession that the claimants in the various actions are entitled to anything. So in the instant case the amounts claimed by the defendants in

their various actions are conceded by the plaintiff to be the amounts for which recovery was asked; but the validity of the claims for those amounts is denied.

In Woodmen of the World v. O'Neill,[2] a fraternal society brought action against 25 of its members alleging that the defendants had been defeated in their attempts to secure election as delegates to a society convention; that nevertheless defendants had brought 25 actions at law in Texas to recover certain amounts, each of which amounts was under the jurisdictional requisite; that the suits were brought pursuant to a concert and conspiracy to embarrass and to ruin the society. The plaintiff asked for an injunction against the prosecution of the suits. The Supreme Court held, reversing the lower court, that the required jurisdictional amount was present because the aggregate of the claims was the value of the amount in controversy, and that the several claims are deemed tied together, in a suit to enjoin them, as one claim for jurisdictional purposes.[3]

We think that for the purpose of testing the jurisdictional amount the facts of this case come within the rule announced in the foregoing and other cases.

It is a further contention of defendants that the District Court was without power to grant the injunction in view of Section 265 of the Judicial Code.[4] The section in question has been discussed frequently by the Supreme Court and by Circuit Courts of Appeals. It has been stated by the Supreme Court that "it is not a jurisdictional statute"; that "it merely limits their [District Courts'] general equity powers in respect to the granting of a particular form

---

[2] 266 U.S. 292, 45 S.Ct. 49, 69 L.Ed. 293.

[3] "It is not only alleged that the defendants' claims are without foundation, but that they originated and are being prosecuted in the state court in pursuance of an agreement and conspiracy to embarrass and attempt to ruin the Society. There is no dispute as to the amount of any particular claim; and the validity of all of them depends upon the same issue. A conspiracy to prosecute, by concert of action, numerous baseless claims against the same person for the wrongful purpose of harassing and ruining him, partakes of the nature of a fraudulent conspiracy; and in a suit to enjoin them from being separately prosecuted, it must likewise be deemed to tie together such several claims as one claim for jurisdic-

tional purposes, making their aggregate amount the value of the matter in controversy. We conclude, therefore, that, on the face of the bill, the District Court had jurisdiction of the suit by reason of the diversity of citizenship and the amount in controversy." Woodmen of the World v. O'Neill, supra, 45 S.Ct. 50. See also McDaniel v. Traylor, 196 U.S. 415, 25 S.Ct. 369, 49 L.Ed. 533; Jamerson v. Alliance Ins. Co. of Philadelphia, 7 Cir., 87 F.2d 253, certiorari denied 300 U.S. 683, 57 S.Ct. 753, 81 L.Ed. 886.

[4] 28 U.S.C.A. § 379. "The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a State, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy."

of equitable relief"; that "in short, it goes merely to the question of equity in the particular bill"; that "this Section, as settled by repeated decisions of this court [Supreme Court], does not prohibit in all cases injunctions staying proceedings in a State court"; and that "such injunctions may be granted, consistently with its provisions, in several classes of cases." [5]

■ In Jamerson v. Alliance Ins. Co., [6] this Court affirmed an injunction decree of a Federal District Court which enjoined the prosecution of state court actions which were brought in pursuance of a fraudulent conspiracy. Defendants attempt to distinguish the instant case from the Jamerson case, but we are of the opinion that the facts of the two cases do not admit of the distinction. It is true that the facts upon which equity jurisdiction rested in the Jamerson case are not the same as the facts upon which equity jurisdiction rests in the instant case; but that is not material if the facts in the instant case constitute grounds for the exercise of equitable and injunctive powers of the Federal Court. The following statement from the opinion in the Jamerson case aptly disposes of defendants' attempted distinction:

"It is unnecessary to discuss at length the applicability of section 265 of the Judicial Code (28 U.S.C.A. § 279). The Supreme Court has held that it is not a jurisdictional statute, but one that merely goes to the equity presented by the bill. That court has further held that if the bill discloses a case appropriate for the exercise of equitable and injunctive powers of a federal court, an injunction of the character here involved may be issued. * * This question was fully discussed in the District Court's opinion, and we concur in the result reached therein."

■ We are of the opinion that the facts alleged in the bill of complaint in the instant case, which are established by the evidence, constitute grounds for the exercise of the equity power of injunction by the federal district court and that under the decisions of the Supreme Court of the United States the exercise of such power does not fall within the inhibitions of Section 265 of the Judicial Code.

Defendants contend that both under the law of Illinois and the federal law attorneys' fees expended in defending against malicious prosecutions are not recoverable in a suit based upon the malicious prosecutions; and further urge that in the instant case the evidence does not show that the plaintiff expended $4,000 for attorneys' fees in defending the suits which are the subject of the instant injunction proceeding.

■ In view of the decision in Erie R. Co. v. Tompkins, [7] it is clear that as between the law of Illinois and the law announced by federal decisions the law of Illinois must control in the determination of the right of plaintiff association to recover the cost of attorneys' fees as an item of damages.

Defendants rely upon Smith v. Michigan Buggy Co. [8] and Schwartz v. Schwartz [9] for the rule that "Attorneys' fees expended in the defense of unfounded prosecutions are not recoverable as damages in an action for malicious prosecution, where the proceeding complained of was an ordinary civil action, begun by summons, and not accompanied by arrest of a person or seizure of his property." Our understanding of the general rule as announced by the foregoing cases is that it goes further than to prohibit the recovery of attorneys' fees; it denies the right of recovery at all "where the process in the suit so prosecuted is by summons only, and is not accompanied by arrest of the person, or seizure of the property, or *other special injury* not necessarily resulting in all suits prosecuted to recovery for like causes of action." [10] (Our italics.) In short, the decisions of the Appellate and Supreme courts of Illinois, while adhering to the general rule that no action will lie for malicious prosecution in the ordinary case, recognize an exception in special cases.

In Payne v. Donegan [11] it was held that a party had a cause of action against another who maliciously and without probable cause instituted a succession of suits against him before a justice of the peace holding his office at a distance from the

[5] Smith v. Apple, 264 U.S. 274, 278, 279, 44 S.Ct. 311, 313, 68 L.Ed. 678.

[6] 7 Cir., 87 F.2d 253, 256.

[7] 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

[8] 175 Ill. 619, 51 N.E. 569, 67 Am.St. Rep. 242.

[9] 366 Ill. 247, 8 N.E.2d 668, 112 A.L. R. 325.

[10] Smith v. Michigan Buggy Co., supra, 51 N.E. 571.

[11] 9 Ill.App. 566.

place of residence of the defendant; and who, upon the defendant's appearance to defend a particular suit allowed such suit to be dismissed and immediately commenced another for the same cause. The gist of the holding seems to be (1) that even in the absence of an arrest of the person or of an attachment of his goods in connection with a malicious prosecution the defendant in the malicious suit has a cause of action where the facts show a special grievance, and (2) that the expense and trouble caused to the defendant constitutes an injury to his property. The case does not distinguish between attorneys' fees expended in the defense against the malicious suits and any other actual damages sustained as a proximate result of being subjected to the malicious suits.

In later Appellate and Supreme court cases [12] Payne v. Donegan, supra, is distinguished but the soundness of the decision on its facts is not questioned. In Norin v. Scheldt Mfg. Co. [13] and Shedd v. Patterson,[14] the Supreme Court of Illinois applied the rule of Payne v. Donegan, supra. Both of the foregoing cases recognize the Illinois rule which denies the right of action for malicious prosecution of a civil suit in the ordinary case. But in Norin v. Scheldt Mfg. Co., supra, the Supreme Court stated that "certainly the rule should not be extended beyond ordinary civil suits, to embrace those suits which are themselves unusual in their effect upon the defendant." And the opinion in Shedd v. Patterson, supra, contains the following statement: "The costs, even in a single case, are no compensation for the time, trouble, and expense of defending a groundless suit, and, as said in Norin v. Scheldt Mfg. Co., supra, the rule is not to be extended."

In Schwartz v. Schwartz, supra, 8 N.E. 2d 670, the Supreme Court of Illinois recognized the soundness of the exception made in the earlier cases in favor of recovery for a malicious prosecution when the circumstances "were not those of an ordinary civil suit."

■■ In our opinion the decisions of the Illinois Appellate and Supreme courts which have been decided subsequently to the decisions of the Appellate Court in Payne v. Donegan, supra, have not overruled that case, or even qualified its holding that a person who has been the victim of a series of maliciously prosecuted suits can recover damages for the malicious suits, when the facts are such that the prosecution obviously constitutes a case of clear abuse of legal process and intended harassment. And in our opinion the facts of this case present a cause which, under the Illinois decisions, would entitle the plaintiff to recover damages for all injuries which are the proximate result of the malicious prosecutions instituted by the defendants in accordance with their unlawful conspiracy. One item of injury is the expense of attorneys' fees in defending the suits.

■ In respect to the sufficiency of the evidence to support the allowance of $4,000 damages for attorneys' fees, the record contains testimony sufficient to show that the plaintiff association expended at least $4,000 in attorneys' fees and other expenses incident to the defense of the actions which plaintiff sought to enjoin in the present suit. The defendants sought to establish by cross examination of the president of plaintiff association that some of the fees were paid for services in suits in which the president was also a party defendant. But it appears from the testimony of the president that the association had assumed all the expense incident to the defense of suits brought by the defendants against the optometric association alone or against the association and its president. The theory of the instant suit is that the various actions were brought by the defendants for the purpose of harassing and vexing the plaintiff association and as a result of a conspiracy to accomplish the foregoing. There is no evidence tending to prove that the plaintiff did not in fact expend the amount allowed by the trial court and the trial court was justified in fixing the amount of plaintiff's damages at $4,000.

We conclude that the District Court did not err in making its finding of facts or in stating its conclusions of law. The decree of injunction and judgment for damages follow the conclusions of law and are affirmed.

---

[12] Carl Corper Brewing & Malting Co. v. Minwegen & Weiss Mfg. Co., 77 Ill. App. 213; Liquid Carbonic Acid Mfg. Co. v. Convert, 82 Ill.App. 39.

[13] 297 Ill. 521, 130 N.E. 791, 793.

[14] 302 Ill. 355, 134 N.E. 705, 706, 26 A.L.R. 1004.