**S. S. KRESGE CO. v. AMSLER et al.**

**No. 10964.**

Circuit Court of Appeals, Eighth Circuit.

Oct. 21, 1938.

Wayne Ely, of St. Louis, Mo. (Lyon Anderson and Leahy, Walther, Hecker & Ely, all of St. Louis, Mo., on the brief), for appellant.

Paul Dillon and Claude O. Pearcy, both of St. Louis, Mo., for appellees.

Before GARDNER, SANBORN, and BOOTH, Circuit Judges.

GARDNER, Circuit Judge.

This is a suit to restrain appellees, who were defendants below, from picketing appellant's stores in St. Louis and St. Louis County, Missouri, from interfering with the freedom of contract between appellant and its employees, and from injuring appellant's business and disturbing the dealings between it and its employees, or between it and the general public. It will be convenient to refer to the parties as they appeared below.

On trial of the suit, the lower court, upon findings of fact and conclusions of law, denied an injunction and dismissed plaintiff's bill of complaint. The lower court found the following facts:

The American Federation of Labor is a voluntary, unincorporated, non-profit and non-stock organization, composed of different international unions, which are also voluntary, unincorporated, non-profit, and non-stock organizations and that these, in turn, are composed of local unions. Some of the objectives and aims of the American Federation of Labor are to engage in collective bargaining as to hours, wages and conditions of work and employment on behalf of its members who may be employed, to obtain and secure employment for and on behalf of its membership, and to secure recognition of the affiliated unions or portions of unions of which it is composed in the respective crafts or industries corresponding to the local or affiliated unions, which bargaining takes place on behalf of the American Federation of Labor by the international unions or the local unions thereof, which go to compose the Federation.

The plaintiff is a Michigan corporation duly authorized to do business in Missouri. It owns, operates, and maintains approximately [sic] more than 700 chain stores which are located and distributed in various locations in more than twenty states in the United States. Nine of these stores are in St. Louis and in St. Louis County, Missouri. More than 50 per cent of the manufactured and processed goods, wares, and merchandise, which the plaintiff sells in its chain stores, including the nine stores in St. Louis and St. Louis County, Missouri, are purchased in states other than Missouri and are shipped and moved to the stores.

The plaintiff, in the nine stores in St. Louis and St. Louis County, Missouri, employs approximately 300 persons as waitresses, clerks and cooks. The defendant unions are composed of members engaged in the same industry and trade. The defendant unions and their agents and servants are walking along the public sidewalk in front of and at the side of the stores of the plaintiff at 522 Washington Avenue and 516 Washington Avenue, in St. Louis, Missouri, and intend to do the same around each of the other stores owned and operated by the plaintiff in St. Louis and St. Louis County, Missouri. They are stating and advertising to the public that plaintiff is unfair to its employees in its nine stores, and are asking the public not to patronize plaintiff. They are carrying umbrellas which bear upon them in words, figures, and characters, that plaintiff is unfair to its employees; that the defendants are distributing handbills to those passing by, which read as follows:

"Unfair all Kresge and McCrory 5–10–$1.00 Stores.

"Please do not Patronize—Help us to help the working girls and men in their employ to receive a living wage and better working conditions—Dont let them mislead you. Waitresses' Union Local No. 249, Clerks' Union Local No. 655, Cooks' Union Local No. 26. Affiliated with the American Federation of Labor, Central Trades and Labor Union and the Label Trades Section of St. Louis."

In some other states, the plaintiff has negotiated with the local waitresses' unions, and the local clerks' unions, and has agreed to employ only such clerks and waitresses as belong to these unions in those stores, and to recognize the unions in such stores as the sole bargaining agencies. None of the employees of the plaintiff are members of either of the defendant unions. The defendants intend to continue the picketing of the stores of the plaintiff, and the purpose of this is to force plaintiff to recognize the defendants as the exclusive bargaining agencies for the waitresses and clerks in the employ of plaintiff in St. Louis, and St. Louis County, Missouri.

In the early part of 1937, plaintiff entered into and conducted negotiations with defendants and discussed the subject of wages, hours of labor, terms of employment, and collective bargaining for the employees of plaintiff in its stores in St. Louis and St. Louis County; a written contract was presented to plaintiff by the individual defendants on behalf of their organizations, embodying the terms, hours, conditions of labor, wages to be paid, and recognition of the defendant organizations and their agents for the purpose of representing the employees in collective bargaining. Plaintiff refused to sign the contract and refused to enter into any written agreement with either of the defendant local unions, or their agents, and on or about April 10, 1937, plaintiff discontinued and terminated negotiations with the defendants and thereupon the picketing commenced. Soon thereafter, plaintiff commenced this suit for injunction.

The court found that if the acts of the defendants were unlawful, the amount involved by way of damages, exclusive of interest and costs, would be in excess of $3,000.

The court concluded, as a matter of law, that there was a labor dispute as defined in the Norris-LaGuardia Act, 29 U.S.C.A. § 101 et seq., and that it therefore had no power to grant any injunctive relief. It further concluded that no interstate commerce was involved, and that plaintiff had no right to relief under the provisions of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq. It concluded that defendants, while picketing the premises of plaintiff, were not guilty of fraud, misrepresentation, force, or violence in the statements, acts, and conduct of defendants while picketing, and entered decree denying an injunction.

Plaintiff alleged that it had invested several thousand dollars in its nine stores at the places and locations alleged and in the stocks of goods carried therein; that it had enjoyed the good will of the general public, which good will was of the value of more than $3,000, which would be totally destroyed and lost if defendants were not enjoined; that it had suffered loss of profits from the sale of its goods, wares, and merchandise in excess of the sum of $3,000, and would suffer great and irreparable loss of profits in excess of $3,000. The allegations as to the amount in controversy were appropriately challenged by the defendants, and plaintiff introduced evidence by which it sought to support these allegations.

On this appeal plaintiff contends: (1) that injunctional relief should have been granted it; (2) that the court erred in concluding that there was a labor dispute, and that the Norris-LaGuardia Act prevented the court from granting injunctional relief; (3) that the court erred in concluding that plaintiff was not engaged in interstate commerce; and (4) that the court erred in concluding that defendants, while picketing, were not guilty of fraud, misrepresentation, or violence.

While, as has been observed, the lower court found that the amount in controversy by way of damages was in excess of $3,000, exclusive of interest and costs, this finding is challenged by the defendants, and as the question goes to the jurisdiction of the court, we must consider it. Thus, in Miller v. First Service Corporation, 8 Cir., 84 F.2d 680, 109 A.L.R. 1179, we said [page 683]: "We deem it to be fully established that it is the duty of the District Courts to assure themselves of the federal jurisdiction in every case before them, and consent given by a defendant to the exercise of jurisdiction upon subject-matter not within the jurisdiction is of no avail. * * * This duty can and should be enforced by this court as to all cases coming before it from the District Courts."

■ The defendants having challenged the allegations as to the amount in controversy, it was incumbent upon the plaintiff to submit proof to reinforce, strengthen, or establish the formal allegations. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135; Kvos, Inc. v. Associated Press, 299 U.S. 269, 57 S.Ct. 197, 81 L.Ed. 183; Healy v. Ratta, 292 U.S. 263, 54 S.Ct. 700, 78 L.Ed. 1248; Kroger Grocery & Baking Co v. Lutz, 299 U.S. 300, 57 S.Ct. 215, 81 L.Ed. 251; Miller v. First Service Corporation,[1] supra; Zicos v. Dickmann, 8 Cir., 98 F.2d 347.

■ Plaintiff introduced evidence to show that at its store at 522 Washington Avenue, in St. Louis, Missouri, it carried a stock of goods of the value of $134,000. It keeps records showing the daily sales of its stores. The picketing complained of started on Tuesday, April 13, 1937, and testimony was submitted on Monday, April 19, following. The sales at this store for Tuesday, April 13, 1937, were $2,004.57, as compared with $2,086.63 on Tuesday, April 14, 1936, or a decrease of $82.06. On Wednesday, April 14, 1937, the second day of the picketing, the sales were $1,665.98, as compared with sales amounting to $2,254.33 on Wednesday, April 15, 1936, a decrease of $588.35. On Thursday, April 15, 1937, the sales were $2,043.19, as compared with sales of $2,730.94 on Thursday, April 16, 1936, a decrease of $687.75. On Friday, April 16, 1937, the sales were $2,333.96, as against sales of $2,817.14 on Friday, April 17, 1936, a decrease of $483.18. On Saturday, April 17, 1937, the sales were $3,593.74, as compared with sales of $4,257.31 on Saturday, April 18, 1936, a decrease of $663.57. For the first three months of the year 1937, before the picketing began, the sales at this store showed an increase of 1½% over the same period for the year 1936. During the first five days of the picketing, the sales at this store showed a decrease of 17.58% as compared with the same five days of the corresponding week in April, 1936. On the first day of the picketing, the decrease amounted to 3.92%. The average decrease in sales for the next four days, as compared with the same four days of the corresponding week in 1936, was 21%.

The parties, at the hearing, stipulated that the evidence should be limited to conditions prevailing at the store at 522 Washington Avenue, St. Louis, and that the defendants intended to "carry on" at each of the nine stores in the same manner as they were then carrying on at that store. Was this sufficient evidence to show that the amount in controversy exceeded, exclusive of interest and costs, $3,000?

There is no claim that plaintiff was prevented from prosecuting its business. The manifest purpose of the testimony was to show a decrease in the volume of sales made following the acts of picketing by the defendants. The evidence shows a decrease in the volume of sales made as compared with corresponding dates of the previous year. It also shows that for three months prior to the beginning of the picketing there had been an increase in volume of sales over those for the corresponding period of the previous year. Whether the evidence was sufficient to show that the decrease in volume of sales was necessarily or probably attributable to the picketing and not to other circumstances or conditions, we need not pause to inquire. Plaintiff's loss or damage could not be measured by the value of the decrease in volume of the merchandise sold by it. The merchandise not sold was presumably still on its shelves and it had not been deprived of it. Its loss would depend upon the profit it might reasonably have anticipated from the sale of the merchandise represented by the decrease in the volume of sales. There was no evidence from which it could be determined whether plaintiff was carrying on its business at a profit, and if so, the extent or amount of such profit. So far as appears from the record, it may well be that its profits were not measured by the volume of its sales, but if they were so measured, there is nothing to indicate their value or amount. The total difference of the sales, shown by the very limited comparison, was $2,504.91 in favor of 1936. But, as before observed, there was no destruction or loss of this property, nor was the plaintiff prevented from prosecuting its business. As said in Kroger Grocery & Baking Co. v. Lutz, supra, "In determining whether the requisite jurisdictional amount is in controversy, where it does not appear that the complainant is deprived of its license or is prevented by the regulation from prosecuting its business, the question is not the value or net worth of the business, but the value of the right to be free from the regulation, and this may be measured by the loss, if any, that would follow the enforcement of the rule prescribed."

In Zicos v. Dickmann, supra, in an opinion by Judge Sanborn, it is said [page 349]:

"It is the value of the right which the petitioner seeks to protect against interference which measures the amount in controversy in such a suit as this."

So here, the amount involved must be measured by the loss caused by the picketing. The burden of proof was upon the plaintiff to support the allegations as to the amount in controversy. Having failed to do so, the lower court should have dismissed the bill for want of jurisdiction.

The lower court being without jurisdiction to determine the issues on the merits, this court is likewise without jurisdiction to do so, and we pretermit any discussion of them. The cause is therefore remanded to the lower court with directions to dismiss the bill for want of jurisdiction.