**CENTRAL MEXICO LIGHT & POWER CO. et al. v. MUNCH et al. (OLD COLONY TRUST CO., Intervenor).**

**No. 88.**

Circuit Court of Appeals, Second Circuit.

Dec. 6, 1940.

James L. Boone, of New York City (Reid & Priest, Edwards & Smith, Edwin D. Ford, Jr., and George Pfann, all of New York City, on the brief), for plaintiffs-appellants.

Stoddard B. Colby, of New York City (Breed, Abbott & Morgan and Dana T. Ackerly, all of New York City, on the brief), for intervenor-appellant.

Samuel Marion and Albert E. Kane, both of New York City (Louis Kunen, of New York City, of counsel), for defendants-appellees.

Before SWAN, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

Plaintiffs herein are Central Mexico Light and Power Company, obligor on certain due and unpaid first mortgage bonds, the Guanajuato Power and Electric Company, guarantor of the bonds, the Michoacan Power Company, whose entire income is asserted to be derived from Guanajuato, and Empresas Electricas Mexicanas, Inc., holder of a large amount of the bonds. The latter claims to represent also all others similarly situated as bondholders. In this action plaintiffs sought an injunction to restrain three individual bondholders, who have brought suit upon the bonds in the courts of the State of New York, from further prosecution of their suits. They also asked like relief against others situated similarly to the named defendants and further prayed a declaratory judgment adjudicating the various rights of the parties under the bonds. Intervention was sought by Old Colony Trust Company. The district court denied the petition to intervene and dismissed the action on the merits on the motions of defendants. Plaintiffs and the intervenor appeal.

In a careful opinion the court below considered the effect of a no-action clause found in the deed of trust securing the bonds, whereby individual bondholders were prohibited from suing except under conditions not here present (including failure of the trustee to act upon request of one-fourth of the bondholders). The court ruled that the alleged prohibition therein did not restrain defendants from pressing their suits, both because it was not incorporated into the bonds they held and because it referred only to enforcement of the security, and not to actions merely to collect the principal sums due the

separate bondholders. In addition to the issue passed on by the court, there were questions as to whether there was any equity in the plaintiffs' claim for an injunction, particularly in view of 28 U.S.C.A. § 379, or whether they should not be remitted to their defenses in the New York actions. But we think all these matters should be passed by, since we are met at the threshold with a claim of lack of federal jurisdiction, which we think is well taken.

 Jurisdiction is based on diversity of citizenship. The parties are citizens of different states, but the question arises whether, as the complaint formally alleges, "the matter in controversy exceeds, exclusive of interest and costs, the sum of $3,000.00." Defendants Marx and Peifer filed an answer in which, as a second defense, they asserted that the court lacked jurisdiction because there was not the requisite amount as to each of them. At the same time they filed a motion to dismiss for this lack of jurisdiction, among other grounds. Defendant Munch filed an answer asserting that he was interested in only a single $1,000 bond, and also moved for severance, dismissal, summary judgment, and such other and further relief as might be just and proper. Moreover, in two separate affidavits he raised the question of jurisdiction, and in one he asked specifically for dismissal on that ground. Plaintiffs' suggestion that Munch is not relying upon this objection surely is not well taken, nor is plaintiffs' objection that the motion to dismiss of the other defendants came too late. It is not important whether the objection is called a motion to dismiss or one for summary judgment. Since the same relief is sought, the difference in name is unimportant. In any event, the affidavits presented are available on either motion. Federal Rules 6(d), 12(b), 43(e), 56(e), 28 U.S.C.A. following section 723c; Palmer v. Palmer, D. C. Conn., 31 F.Supp. 861; 1 Moore's Federal Practice 645-647. Moreover, it is well settled that plaintiffs always have the burden of proving jurisdiction, KVOS, Inc., v. Associated Press, 299 U.S. 269, 57 S.Ct. 197, 81 L. Ed. 183, and the court must raise the objection of its own motion if it is not otherwise presented. Clark v. Paul Gray, Inc., 306 U.S. 583, 59 S.Ct. 744, 83 L.Ed. 1001; Bender v. Connor, D.C.Conn., 28 F.Supp. 903; Federal Rule 12(h).

 If the interests of defendants are considered separately, jurisdiction here is lacking, since, as the record shows, Munch owns only one $1,000 bond and the other defendants do not each own bonds of $3,000 or more in amount. True, the record shows only their general allegation to that effect, but it is conceded in the briefs that Peifer held $2,000 and Marx $1,500 of the bonds. (It is stated that affidavits expressly showing these facts—strangely enough—were omitted from the record by stipulation.) Plaintiffs assert, however, that in a claim for injunction against these defendants their separate ownerships are not controlling, and that the value of the interest to plaintiffs is the test. This, the so-called plaintiff's viewpoint test—discussed by Judge Dobie in 38 Harv. L. Rev. 733, and in 1 Moore's Federal Practice 511, 512 and 49 Yale L.J. 274—seems now well settled; but the cases require of the plaintiffs precision in showing exactly what interest the injunction is to protect and that its value exceeds $3,000. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135; Kroger Grocery & Baking Co. v. Lutz, 299 U.S. 300, 57 S.Ct. 215, 81 L.Ed. 251; 49 Yale L.J. 274. As is pointed out in Healy v. Ratta, 292 U.S. 263, at 270, 54 S. Ct. 700, 703, 78 L.Ed. 1248, the "policy of the statute" defining federal jurisdiction, 28 U.S.C.A. § 41(1), and "due regard for the rightful independence of state governments" both call for a strict construction of jurisdictional requirements.

Plaintiffs attempt to meet this issue by showing that reorganizations of the debtor and associated companies will be upset, to the financial loss of the companies and their creditors; and, answering the point that individual bondholders are legally entitled to refuse assent to such plans, they assert a conspiracy to promote "strike suits." Further they rely on the asserted representative or class character of the action. They say that more than 96 per cent of Central Mexico's bondholders—all but 23 holders of $41,000 of bonds out of an issue in excess of a million—have already assented to a plan of reorganization extending for ten years the time of payment of the principal of the bonds, after an immediate partial payment of 12½ per cent thereof. And if immediate payment in full of these bonds can be forced, that will mean foreclosure upon Guanajuato, guarantor of these bonds, and forced liquidation of these companies and of Michoacan, whose bonds are pledged as security, to the loss of all the bondholders, including defen-

dants and the fourth plaintiff, Empresas Electricas Mexicanas, Inc., owner of a large block of Central Mexico bonds. It is also said that subject to sacrifice is a similarly partially completed plan of reorganization of Mexican Utilities Company—not named as a plaintiff, although called such in the detailed allegations of the complaint—whose bonds are secured by Central Mexico bonds to the extent of $740,000.

Plaintiffs' complaint is in three counts. In the first they rely on the above facts and on the claimed prohibition against suit by individual bondholders upon which the district court found against them, and then they allege that Marx and Peifer, "in conjunction with their counsel and others, have conspired and are presently conspiring to institute a multiplicity of 'strike suits' and to 'hold up' Central Mexico Light and Power Company's said Extension Plan * * * for the sole purpose of obtaining or attempting to obtain an inequitable and illegal advantage over all other owners or holders of said Bonds through the process of such 'strike suits' and a multiplicity thereof." Such action on the part of defendants, "and all other persons similarly situated as owners or holders" of Central Mexico bonds, is contrary to agreement and to the "rights and desires" of all the bondholders assenting to the Extension Plan, and is likely to result in numerous proceedings "extremely expensive and burdensome to the plaintiffs herein, which would have the effect of disrupting the business and operations" of all the plaintiffs. A second count incorporates these allegations by reference, points out that, under an equality provision of the Extension Agreement, enforcement of the bonds by any of the holders will render the agreement null and void, and alleges that all the companies are located in Mexico, where, under existing economic, social, and political conditions, forced liquidation will be disastrous to the bondholders and will result, among other things, in loss of their public utility franchises. The final count realleges these allegations particularly to assert the loss to plaintiff, Empresas Electricas Mexicanas, Inc., holder of more than $99,000 Central Mexico bonds and $71,000 Mexican Utilities bonds, as well as "all other persons similarly situated" as holders of either bonds.

We do not think the assertion of a class or representative suit, in itself and apart from any show of conspiracy, can avail to bolster the plaintiffs' claim of jurisdiction. Thus the defendants, unless they are conspirators, are joinable only because of the existence of a "common question of law or fact," as provided in the provisions for permissive joinder. Federal Rule 20(a). If they can be sued as representing others similarly situated, it is only because Rule 23(a) (3) allows it "when the character of the right sought to be enforced for or against the class is * * * several, and there is a common question of law or fact affecting the several rights and a common relief is sought." This is the so-called "spurious class" discussed in 2 Moore's Federal Practice 2241-2245. As Professor Moore points out, this is but a means of joinder, without bringing all the parties before the court, where there is no real connection between them, and hence the amounts in controversy may not be aggregated to make up the jurisdictional amount required. Citizens' Bank v. Cannon, 164 U.S. 319, 17 S.Ct. 89, 41 L.Ed. 451; Northern Pacific R. Co. v. Walker, 148 U.S. 391, 13 S.Ct. 650, 37 L. Ed. 494; Walter v. Northeastern R. Co., 147 U.S. 370, 13 S.Ct. 348, 37 L.Ed. 206; see also Woodmen of the World v. O'Neill, 266 U.S. 292, 45 S.Ct. 49, 69 L.Ed. 293. For like reasons a judgment rendered in such an action is not binding upon the persons represented. Hansberry v. Lee, 311 U.S.——, 61 S.Ct. 115, 85 L.Ed. ——, Nov. 12, 1940; 2 Moore's Federal Practice 2283-2294; 49 Yale L.J. 1128; see also Advisory Committee's notes to Rule 23.

So far as concerns plaintiffs, the real wrong, if any, would seem to be in right of the obligor. The mere fact that one bondholder with bonds in excess of $3,000 is attempting to sue for itself as well as for others similarly situated adds nothing to the claim of Central Mexico, which must carry the burden of showing that there is a wrong done it which will prevent its fulfillment of its obligations. It may be thought that Empresas Electricas Mexicanas, Inc., the bondholder in question, is entitled to seek adjudication of its individual claim, however unfounded that claim may turn out to be. But in view of the strictness with which the jurisdictional requirement is viewed, we do not think that joinder of a bondholder can avoid the difficulty which would face the plaintiff with the primary right. The derivative right, it would appear, is necessarily worth no more at most than the primary right.

We think, therefore, that the only possibility of jurisdiction is in the so-called exception to the rule against aggregating distinct claims stated in McDaniel v. Traylor, 196 U.S. 415, 25 S.Ct. 369, 49 L.Ed. 533, and Woodmen of the World v. O'Neill, supra, and based essentially upon a charge of conspiracy to injure the plaintiffs. The cases reveal that this exception has been based on a showing of a fraud in the original establishment of the claims sought to be enjoined, and a joint participation in this fraud by pretending claimants. In such event, the individual suits by pretending claimants are but incidents in the culmination of a general illegal plan. In McDaniel v. Traylor, supra, 196 U.S. at 427, 25 S.Ct. at 373, 49 L.Ed. 533, the Court emphasized the allegations indicating a "fraudulent combination and conspiracy," i.e., that there were no reasonable grounds for defendants' claims, but rather a fraudulent procurement of their recognition by collusion with a court officer. Where such fraud in the inception was not established, aggregation of the various claims was not allowed. See McDaniel v. Traylor, 212 U.S. 428, 29 S.Ct. 343, 53 L.Ed. 584. In Woodmen of the World v. O'Neill, supra, 266 U.S. at 297, 45 S.Ct. at 50, 69 L.Ed. 293, it was thought essential that "the defendants' claims are without foundation, but that they originated and are being prosecuted in the state court in pursuance of an agreement and conspiracy to embarrass and attempt to ruin the Society." In Di Giovanni v. Camden Fire Ins. Ass'n, 296 U.S. 64, at 68, 56 S. Ct. 1, at 3, 80 L.Ed. 47, reversing 8 Cir., 75 F.2d 808, the "peculiar doctrine" of the O'Neill case was said to apply only "where the conspiracy was to abuse the processes of the courts by the prosecution of groundless suits." The exception has been recognized and aggregation permitted in a few decisions below, compare Jamerson v. Alliance Ins. Co., 7 Cir., 87 F.2d 253, certiorari denied 300 U.S. 683, 57 S.Ct. 753, 81 L.Ed. 886; American Optometric Ass'n v. Ritholz, 7 Cir., 101 F.2d 883, certiorari denied 307 U.S. 647, 59 S.Ct. 1047, 83 L.Ed. 1527, but the lack of any one of its essentials is invariably held fatal. Georgia Power Co. v. Hudson, 4 Cir., 49 F.2d 66, 75 A.L.R. 1439; Armour & Co. v. Haugen, 8 Cir., 95 F.2d 196.

■ Here it is clear that on their face defendants have apparent claims against their obligor; indeed, on the district court's interpretation of the agreement they have indefeasible legal claims. And plaintiffs make no charge of fraud in the establishment of those claims, or even of any collaboration between defendants Marx and Peifer before the time at which the latter seek recovery; nor do they come closer to alleging the purpose of defendants' suits to be mere harassment than the words "conspiring to institute * * * 'strike suits' * * * for the sole purpose of obtaining * * * an inequitable and illegal advantage." These allegations fall far short of any of those previously recognized as justifying aggregation of claims.

Moreover, there is no real showing, by affidavit or otherwise, that the defendants' action is likely to produce the more remote injuries asserted to be unavoidable on payment of any bondholder. Plaintiffs offer the affidavit of J. H. Moseley, vice-president of Central Mexico, that "complainants have reason to believe that further actions are contemplated" on Central Mexico bonds; that the action of defendants "must of necessity disturb, impair and prejudice the security of the entire bond issue"; that the properties of three of the plaintiffs are so integrated that "any serious disturbance of any one of such properties such as might result from execution on judgments under the circumstances involved in this action must disturb and seriously interfere with the proper management, control and operation of said properties," with the resulting "risk of interference" by the Mexican Government. And the affidavit of a Mexican lawyer declares that bankruptcy proceedings "generally" result in loss of control; that they "might easily lead to * * * forced sale"; that the franchises "may be declared forfeited upon interruptions in service."

Great gaps in this proof are obvious. That the Extension Plan would be invalidated is attributed to Section 10(b) of the Supplemental Indenture thereunder, which actually invalidates only such provisions as prevent holders of Extended Bonds from sharing ratably under the mortgage, whereas the defendants here have never asserted rights under the mortgage. But even if we assume that assenting bondholders would be released from the Extension Agreement, there is no evidence that they would choose to foreclose, or even seek to levy on unmortgaged property. The overwhelming majority which has co-

operated to this point might well find its benefit lay in a reaffirmation of the agreement. It was not said that any of the assentors threatened foreclosure, nor that bankruptcy could not be escaped if the assentors continued to be co-operative. Nor is there any evidence that all or part of this indebtedness cannot be refinanced. Similarly, there is a complete absence of showing that the Guanajuato mortgage will actually be foreclosed, even if the pledgee of bonds under it does have the power to do so, and consequently no evidence that harm will result to Michoacan.

All of these speculations on possible or even probable results of a refusal of relief are far short of proof of the jurisdictional amount in controversy, not to speak of proof with the precision required by the McNutt, KVOS, and Kroger Grocery cases, supra. Compare also S. S. Kresge Co. v. Amsler, 8 Cir., 99 F.2d 503, certiorari denied 306 U.S. 641, 59 S.Ct. 582, 83 L.Ed. 1041; Gibbs v. Buck, 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111. The claim for intervention falls with the original action. Pianta v. H. M. Reich Co., 2 Cir., 77 F.2d 888.

The judgments are therefore modified to state that the action is dismissed for want of jurisdiction of the court, rather than for failure of the complaint to state a cause of action against the defendants; as modified, they are affirmed.