**John GALLOGLY et al., Plaintiffs,**

v.

**BAKERY AND CONFECTIONERY WORKERS INTERNATIONAL UNION OF AMERICA, Great Atlantic & Pacific Tea Company, James A. Howe and Frank Mykalo, Defendants.**

Civ. A. No. 2296.

United States District Court
D. Rhode Island.

Jan. 8, 1960.

Milton Stanzler, Julius C. Michaelson, Providence, R. I., for plaintiffs.

Proskauer, Rose, Goetz & Mendelsohn, New York City, Graham, Reid, Ewing & Stapleton, Providence, R. I., Edward Silver and Jacob Imberman, New York City, Owen P. Reid, Providence, R. I., of counsel, for defendants.

DAY, District Judge.

This is an action brought by one hundred and ninety-six persons who are present or former employees of the defendant Great Atlantic & Pacific Tea Company. As originally filed the complaint also joined the Bakery and Confectionary Workers International Union of America as defendant, but was subsequently dismissed as to that defendant for want of jurisdiction. The other named defendants, James A. Howe and Frank Mykalo, were never served with process. Thus the sole defendant before this Court is the Great Atlantic & Pacific Tea Company (hereinafter called "the Company"). Jurisdiction of this Court is based upon diversity of citizenship and the existence of a controversy in the requisite amount. 28 U.S.C.A. § 1332.

The plaintiffs' amended complaint contains three counts. In Count I the plaintiffs allege that the Independent Bakery Workers Union (hereinafter called "the Independent") was organized by the production and maintenance employees of the Company's bakery in Cranston, Rhode Island, on April 12, 1956, because said employees were dissatisfied with the representation afforded them by Local 184 of the Bakery & Confectionery Workers International Union of America (hereinafter called "B & C") and because of alleged improper practices and conduct of said B & C and its officers; that the plaintiffs were members of the Independent; that the defendants named in the plaintiffs' original complaint knew that the plaintiffs were employed by the Company in its Cranston bakery and that they were members of said Independent; that at an election conducted by the National Labor Relations Board on November 28, 1956, the Independent was chosen as the collective bargaining representative for the regular and regular part-time production and maintenance employees at said bakery (replacing said Local 184); that on December 6, 1956, the National Labor Relations Board designated and certified said Independent as the collective bargaining agent for said employees; that following the organization of said Independent, all the defendants named in said original complaint and their agents, and Local 184 and its agents, combined and conspired among themselves and with others to make certain that the Independent should not represent the said employees of the Company at its Cranston, Rhode Island bakery; and that following said election and certification of the Independent, all of the named defendants and their agents and said Local 184 "combined and conspired among themselves and with others, unlawfully and maliciously, jointly and severally to interfere with the employment contract and right of the plaintiffs with the defendant Company * * * as a result whereof the plaintiffs subsequently lost their employment with the defendant Company for a long period of time, suffered loss of wages, other monetary losses, humiliation, pain, and mental suffering", for all of which each plaintiff seeks damages in the sum of $20,000.

Count II repeats the allegations of Count I with respect to the organization of the Independent, its election and certification as collective bargaining agent, and charges that the named defendants and their agents, and Local 184 and its agents combined and conspired among themselves and with others to make certain that the Independent should not represent the said employees at said bakery; and also combined and conspired "for the defendant Company to be induced and persuaded to break and sever the employment of each of the plaintiffs with the said defendant Company", with the resultant injuries and damages alleged in Count I.

Count III also repeats the aforesaid allegations contained in Counts I and II as to the election and certification of said Independent as bargaining representative, and charges that the named defendants and their agents, and Local 184 and its agents "combined and conspired * * * to deprive the plaintiffs of their rights provided for in said National Labor Relations Act", with the resultant injuries and damages as alleged in Counts I and II. In each of the three counts, each of the plaintiffs seeks judgment in the sum of $20,000.

In its answer the Company denies generally the material allegations in said amended complaint. By way of further answer it asserts that each of said plaintiffs was an employee at will at its bakery; that there was no written or oral agreement which fixed the duration of their employment; that subsequent to the election and certification of the Independent as collective bargaining agent, the Company and representatives of the Independent negotiated with respect to the terms of a collective bargaining agreement; that on December 27, 1956 a number of said employees, including fifty-three of the plaintiffs, left said bakery during working hours; that on the following day all of the plaintiffs failed to report for work; that on December 28, 1956 the plaintiffs filed a charge against the Company with the National Labor Relations Board complaining that it had engaged in unfair labor practices within the meaning of sections 8(a) (1), (2), (3) and (5) of the National Labor Relations Act, 29 U.S.C.A. § 158(a) (1–3, 5), as amended; that subsequently the charge relating to section 8(a) (2) was withdrawn; that said charges were based upon the same facts alleged in the amended complaint filed by the plaintiffs in this action; that, following a hearing on said charges before a trial examiner of said National Labor Relations Board, the Independent, on behalf of the plaintiffs and with their knowledge and consent, settled and compromised all the claims and demands of the plaintiffs against the Company; that said settlement was approved by the Regional Director of the National Labor Relations Board on October 4, 1957; that under the terms thereof the employees of the Company involved in said unfair labor practice charges, including the plaintiffs, accepted the benefits of said settlement agreement, including (a) reinstatement to their former or substantially equivalent positions without prejudice to their seniority rights and other privileges, and (b) the sum of $75,000, which was intended to and did make said employees whole; and that said sum was distributed among said employees, including the plaintiffs, in the manner determined by the Regional Director of said National Labor Relations Board.[1]

The defendant Company has moved for judgment on the pleadings dismissing the amended complaint on two grounds: (1) that this Court lacks juris-

1. It is undisputed that the Company engaged in business "affecting interstate commerce" within the meaning of 29 U.S. C.A. § 152(7). It is equally clear that the Independent did file charges of unfair labor practices against the Company relating to the same activities alleged in said amended complaint, and that those charges were terminated by a settlement agreement. Various documents pertaining to the proceedings before the Board are annexed to the defendant's answer and made a part thereof, including copies of said charges of unfair labor practices and of the said settlement agreement.

diction over the subject matter of said amended complaint; and (2) that said amended complaint fails to state a claim upon which relief can be granted.[2]

Following oral arguments, counsel for the parties were granted leave to submit briefs (which have since been filed).

██ In support of the first ground of its motion the Company contends in substance that the acts of which the plaintiffs complain and for which they seek damages are unfair labor practices within the purview of the National Labor Relations Act, as amended, 29 U.S. C.A. § 151 et seq., and that primary and exclusive jurisdiction to hear and decide the issues in this action is vested by said Act in the National Labor Relations Board. This ground of the motion in essence presents two questions. First, is the subject matter of this action within the ambit of said National Labor Rela-

tions Act? And, if so, must this Court decline jurisdiction thereof in deference to said National Labor Relations Board? In passing upon a motion which challenges the jurisdiction of this Court, it is accepted practice that affidavits and other competent documentary evidence may be considered; and in doing so this Court is not required to treat such a motion as a motion for summary judgment. Estes v. Shell Oil Co., 5 Cir., 1956, 234 F.2d 847; Turchan v. Bailey Meter Co., D.C.Del.1956, 19 F.R.D. 201; Williams v. Minnesota Mining & Manufacturing Co., D.C.Cal.1953, 14 F.R.D. 1. See also Rule 43(e) of the Federal Rules of Civil Procedure, 28 U.S.C.A.

The pertinent provisions of the National Labor Relations Act, sections 7 and 8(a), which appear as 29 U.S.C.A. §§ 157 and 158(a), are set out in full in the margin.[3] Count III of the amended

---

2. Although the Company's motion is called a motion for judgment on the pleadings, it is in reality a motion to dismiss and should be so regarded. Compare Liquid Carbonic Corp. v. Goodyear Tire & Rubber Co., D.C.Ohio 1940, 38 F.Supp. 520. Since the same relief is sought, the title of the motion is unimportant. See Central Mexico Light & Power Co. v. Munch, 2 Cir., 1940, 116 F.2d 85.

3. "157. Right of employees as to organization, collective bargaining, etc.

"Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a) (3) of this title.

"158. Unfair labor practices

"(a) It shall be an unfair labor practice for an employer—

"(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;

"(2) to dominate or interfere with the formation or administration of any labor

organization or contribute financial or other support to it; Provided, That subject to rules and regulations made and published by the Board pursuant to section 156 of this title, an employer shall not be prohibited from permitting employees to confer with him during working hours without loss of time or pay;

"(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: Provided, That nothing in this subchapter, or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization (not established, maintained, or assisted by any action defined in this subsection as an unfair labor practice) to require as a condition of employment membership therein on or after the thirtieth day following the beginning of such employment or the effective date of such agreement, whichever is the later, (i) if such labor organization is the representative of the employees as provided in section 159(a) of this title, in the appropriate collective-bargaining unit covered by such agreement when made and has at the time the agreement was made or within the preceding twelve months received from the Board a notice of compliance with section 159(f), (g), (h) of this title, and (ii) unless following an election held as provided in section 159 (e) of this title within one year preceding the effective date of such agreement,

complaint alleges specifically that the Company combined and conspired with the other named defendants to deprive the plaintiffs of "the rights provided for in said National Labor Relations Act". This count thus clearly charges a violation of § 8(a) (1) of said Act. Counts I and II contain allegations that the Company and the other named defendants conspired to prevent the Independent from representing the plaintiffs at said bakery and to discourage membership in the Independent by discriminating against its members and terminating their employment with the Company. These counts thus charge violations of sections 8(a) (1) and 8(a) (3) of said Act.

Section 8(a) (1) is violated when an employer combines or conspires to prevent a labor organization from representing his employees, thereby interfering with their free choice of a bargaining agent. To illustrate, in National Labor Relations Board v. Wagner Iron Works, 7 Cir., 1955, 220 F.2d 126, certiorari denied 1956, 350 U.S. 981, 76 S.Ct. 466, 100 L.Ed. 850, the Court of Appeals stated at page 142:

"* * * the statute guarantees to employees the right to select their own bargaining agent and, as previously pointed out, this sanction inherently includes the right to change bargaining agents by lawful methods without the employees thereby subjecting themselves to coercive acts on the part of the employer. * * *"

Similarly, section 8(a) (3) of said Act is violated when an employer combines or conspires to discriminate against his employees in order to discourage membership in a union. In Radio Officers' Union, etc. v. National Labor Relations Board, 1954, 347 U.S. 17, at page 42, 74 S.Ct. 323, at page 337, 98 L.Ed. 455, the Supreme Court said:

"The language of § 8(a) (3) is not ambiguous. The unfair labor practice is for an employer to encourage or discourage membership by means of discrimination."

To the same effect, see also Edward G. Budd Mfg. Co. v. National Labor Relations Board, 3 Cir., 1943, 138 F.2d 86, certiorari denied 1944, 321 U.S. 778, 64 S.Ct. 619, 88 L.Ed. 1071.

In my opinion the amended complaint charges the Company with activities which are prohibited by said Act and which constitute unfair labor practices. The issues presented by the pleadings are therefore clearly within the jurisdiction of the National Labor Relations Board to hear and determine in the first instance.

It is well settled that where the activities complained of and for which redress is sought are within the jurisdiction of said Board to hear and determine, all courts, both state and federal, must decline jurisdiction and defer to the primary jurisdiction of said Board. DeVries v. Baumgartner's Electric Construction Co., 1959, 359 U.S. 498, 79 S.Ct. 1117, 3 L.Ed.2d 976; San Diego Building Trades Council, etc. v. Garmon, 1959, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775; Garner v. Teamsters, etc. Union, 1953, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed.

---

the Board shall have certified that at least a majority of the employees eligible to vote in such election have voted to rescind the authority of such labor organization to make such an agreement: Provided further, That no employer shall justify any discrimination against an employee for nonmembership in a labor organization (A) if he has reasonable grounds for believing that such membership was not available to the employee on the same terms and conditions generally applicable to other members, or (B) if he has reasonable grounds for believing that membership was denied or terminated for reasons other than the failure of the employee to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership;

"(4) to discharge or otherwise discriminate against an employee because he has filed charges or given testimony under this subchapter;

"(5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159 (a) of this title."

228; United Electrical, Radio and Machine Workers, etc. v. Worthington Corp., 1 Cir., 1956, 236 F.2d 364; Amazon Cotton Mill Co. v. Textile Workers Union, 4 Cir., 1948, 167 F.2d 183. The rule is well summarized in Weber v. Anheuser-Busch, Inc., 1955, 348 U.S. 468, at page 481, 75 S.Ct. 480, at page 488, 99 L.Ed. 546, where the Supreme Court held:

"* * * But where the moving party itself alleges unfair labor practices, where the facts reasonably bring the controversy within the sections prohibiting these practices, and where the conduct, if not prohibited by the federal Act, may be reasonably deemed to come within the protection afforded by that Act, the state court must decline jurisdiction in deference to the tribunal which Congress has selected for determining such issues in the first instance."

And this rule is reiterated in the recent case of San Diego Building Trades Council, etc. v. Garmon, supra, 359 U.S. at page 244, 79 S.Ct. at page 779, where Mr. Justice Frankfurter, speaking for the Court, said:

"When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield."

And at page 245 of 359 U.S., at page 780 of 79 S.Ct.:

"* * * When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted."

The plaintiffs contend, however, that this rule of preemption is inapplicable here because (1) the activities complained of constitute a tort under the common law of the State of Rhode Island and (2) the relief sought by plaintiffs is not equitable in nature. In support of these contentions they rely upon the cases of International Union, United Automobile, Aircraft and Agricultural Implement Workers etc. v. Russell, 1958, 356 U.S. 634, 78 S.Ct. 932, 2 L.Ed.2d 1030, and International Association of Machinists v. Gonzales, 1958, 356 U.S. 617, 78 S.Ct. 923, 2 L.Ed.2d 1018. In my opinion these cases are readily distinguishable from the instant case.

In the case at bar there are no allegations of conduct marked by violence and immediate threats to the public order such as was present in International Union, United Automobile, Aircraft and Agricultural Implement Workers, etc. v. Russell, supra.

That the presence of these elements was the decisive factor which prompted the Supreme Court to regard the Russell case as an exception to the well established rule and to allow the courts of the State of Alabama to entertain jurisdiction of that action is clear from the subsequent opinion of the Supreme Court in San Diego Building Trades Council, etc. v. Garmon, supra, 359 U.S. at pages 247–248, 79 S.Ct. at page 781, where the Court said:

"It is true that we have allowed the States to grant compensation for the consequences, as defined by the traditional law of torts, of conduct marked by violence and imminent threats to the public order. International Union, United Automobile, Aircraft and Agricultural Implement Workers, etc. v. Russell, 356 U.S. 634, 78 S.Ct. 932, 2 L.Ed. 2d 1030; United Construction Workers, etc. v. Laburnum Const. Corp., 347 U.S. 656, 74 S.Ct. 833, 98 L.Ed. 1025. We have also allowed the States to enjoin such conduct. Youngdahl v. Rainfair, 355 U.S. 131, 78 S.Ct. 206, 2 L.Ed.2d 151; United Automobile, Aircraft and Agricultural Implement Workers, etc. v. Wisconsin Employment Relations Board, 351 U.S. 266, 76 S.Ct. 794,

100 L.Ed. 1162. State jurisdiction has prevailed in these situations because the compelling state interest, in the scheme of our federalism, in the maintenance of domestic peace is not overridden in the absence of clearly expressed congressional direction. We recognize that the opinion in United Construction Workers, etc. v. Laburnum Const. Corp., 347 U.S. 656, 74 S.Ct. 833, 835, 98 L.Ed. 1025, found support in the fact that the state remedy had no federal counterpart. But that decision was determined, as is demonstrated by the question to which review was restricted by the 'type of conduct' involved, i. e., 'intimidation and threats of violence'."

The case of International Association of Machinists v. Gonzales, supra, involved a dispute between a worker and his union concerning his rights as a union member. In holding that the courts of California had jurisdiction to entertain the action and to award damages, the Supreme Court said at pages 621-622 of 356 U.S., at page 925 of 78 S.Ct.:

" * * * The possibility of conflict from the court's award of damages in the present case is no greater than from its order that respondent be restored to membership. In either case the potential conflict is too contingent, too remotely related to the public interest expressed in the Taft-Hartley Act, to justify depriving state courts of jurisdiction to vindicate the personal rights of an ousted union member."

The situation presented in the Gonzales case is far different from a situation where, as here, the gravamen of the action is a series of unfair labor practices allegedly perpetrated by an employer in violation of the fundamental rights which the federal law has undertaken to protect.

In my opinion neither of these cases is authority for the assumption of jurisdiction by this Court, as this action does not fall within the recognized exceptions to the rule of preemption. Nor does the fact that the plaintiffs seek only money damages require a different conclusion. See DeVries v. Baumgartner's Electric Construction Co., supra; San Diego Building Trades Council, etc. v. Garmon, supra.

Since the amended complaint charges the Company with activities which clearly constitute unfair labor practices under said Act, this Court must defer to the jurisdiction of the National Labor Relations Board and is without jurisdiction to hear and determine the merits of this action. My conclusion in this respect makes it unnecessary to consider the other ground of the instant motion.

Judgment will be entered dismissing this action for want of jurisdiction.