ZEP MANUFACTURING CORPORA-
TION, Plaintiff,

v.

Robert F. HABER, Defendant.

Civ. A. No. 14154.

United States District Court
S. D. Texas,
Houston Division.

March 8, 1962.

Baker, Botts, Shepherd & Coates, Houston, Tex. (Robert A. White), Houston, Tex., and Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., for plaintiff.

Herbert N. Lackshin and William E. Ladin, Houston, Tex., for defendant.

INGRAHAM, District Judge.

An application for a preliminary injunction is before the court, with jurisdiction alleged on the basis of diversity of citizenship and an amount in controversy exceeding $10,000, exclusive of interest and costs. The application is opposed by defendant's motion to dismiss for failure to state a claim and for lack of jurisdiction.

Plaintiff, Zep Manufacturing Corporation, asks this court to issue a temporary restraining order against defendant, Robert F. Haber, during the pendency of its action for a permanent injunction against defendant for alleged violations of a covenant not to compete. Until January 20, 1962, defendant was under contract to plaintiff, a manufacturer and distributor of maintenance and sanitation supplies, as a salesman and sales supervisor. The contract of employment contained a restrictive covenant not to compete with plaintiff in a specified area for one year after termination of employment. Defendant terminated his employment with plaintiff on January 20, 1962, and shortly thereafter began selling for Titan Chemical Corporation, in competition with plaintiff. Because this court finds it has no jurisdiction over the dispute, it is unnecessary to relate further details of the covenant or of defendant's conduct alleged to be in violation thereof.

This action must be dismissed because the evidence fails to show that more than $10,000 is in controversy. Although plaintiff's complaint states that more than $10,000 is involved, the facts adduced during the interlocutory hearing and the facts set out in the briefs of the parties do not support this statement. The prayer asks nothing but injunctive relief. It is not ancillary to any other action asserted.

■■ In a suit for an injunction, the amount in controversy is determined by the value of the object to be gained by the plaintiff. Glenwood Light & Water Co. v. Mutual Light, Heat & Power Co., 239 U.S. 121, 36 S.Ct. 30, 60 L.Ed. 174 (1915). In terms promulgated by this circuit, "jurisdiction is to be tested by the value of the right sought to be protected against interference." Seaboard Finance Co. v. Martin, 244 F.2d 329 (5th Cir. 1957). Although some courts have held that the amount in controversy is the benefit to the plaintiff from the injunction, or the cost to the defendant of complying with it, whichever is greater (See, e. g., Ronzio v. Denver & R.G.W.R.Co., 116 F.2d 604, 606 (10th Cir. 1940) ), "the more recent opinions, as a group, reflect the plaintiff-viewpoint concept in determining jurisdictional amount." 1 Moore's Federal Practice 869, 870 (1960 Ed.). Thus, in resolving the dispute engendered by the defendant's challenge to plaintiff's allegations of jurisdictional amount, it is necessary to determine the benefit to the plaintiff from the injunction sought.

■ The testimony of Hubert Jenkins—Zep regional division manager and defendant's immediate superior while in the employ of plaintiff—was uncontroverted that defendant's sales for 1961 were approximately $115,000, and that defendant received approximately $33,000 therefrom. (The affidavit of Jenkins attached to the complaint established these figures more precisely at $114,640 and $32,960, respectively.) Jenkins testified on cross examination that plaintiff's profit on defendant's sales, in Jenkins' estimation, was 10% of the amount paid to defendant—approximately $3,300. Both parties have accepted this estimate in their briefs, and the issue is joined concerning whether the $3,300 is per se representative of the benefit to the plaintiff sought to be protected by the requested injunction, as argued by the defendant; or whether the value to the plaintiff of avoiding competition by defendant is the amount of a hypothetical investment which would produce an annual return of $3,300.

Applying the plaintiff-viewpoint concept, defendant's 1961 income of approximately $33,000 is a neutral fact. Plaintiff's gross income of approximately $115,000 from defendant's 1961 sales is also a neutral fact insofar as it does not reflect true benefit to the plaintiff from defendant's services. See Basic Food Sales Corporation v. Moyer, 55 F.Supp. 449 (D.C.W.D.Pa.1944). See also S. S. Kresge Co. v. Amsler, 99 F.2d 503 (8th Cir. 1938). At best, the estimated profit of $3,300 derived from defendant's 1961 sales is only an analogous basis for determining the value to plaintiff of an injunction prohibiting defendant's competition with plaintiff during a year of uncertain business activity. If, other factors remaining equal, it could be forecast that defendant would siphon off *all* the business he had generated or sustained for plaintiff during 1961, then it could be said that plaintiff would stand to lose an estimated $3,300 in profits if defendant is not restrained. Even if defendant were able to generate new business in the area allegedly covered by the covenant, which business would likely accrue to plaintiff but for defendant's activities in behalf of Titan Chemical Corporation, there is no indication that plaintiff's lost profits would amount to more than $10,000. To do so would entail a business increase of more than 200%. Nevertheless, the plaintiff has suggested no other basis for calculating the benefit to be derived from an injunction, such as the protection of good will. As such, this court is constrained to look to the estimated $3,300 net profit from

defendant's 1961 sales in extrapolating the probable value of an injunction to plaintiff.

Plaintiff advances the rather ingenious theory that the value to it of an injunction, and thus the amount in controversy, is $65,000, which is the size of investment at 5% simple interest capable of producing a $3,300 return. This court is not empowered to pass upon hypothetical fact situations. There are no allegations that plaintiff has a $65,000 investment in the territory designated in the covenant, nor are facts stated suggesting that defendant has destroyed or will destroy a $65,000 investment of plaintiff's. Idle conjecture on alternate avenues of producing a $3,300 profit is of no aid to this court in deciding what actually happened or will happen. Certainly, it is less realistic to indulge in terms of a hypothetical investment than to claim that the amount actually invested (spent) to produce the estimated 1961 profit of $3,300 ($115,000 gross income, less estimated profit of $3,300, equaling $111,700 expense) represents the amount in controversy. This is not the measure of amount in controversy. The measure is profits. S. S. Kresge Co. v. Amsler, supra. Thus, even if the facts would support a finding that defendant had destroyed or taken away business from plaintiff equal in amount to that enjoyed in 1961, the plaintiff would still be out only $3,300, which, before the fact, would represent the interest it sought to protect through enjoining defendant's actions.

Plaintiff has failed to discharge its burden of supporting by competent proof its challenged allegations of amount in controversy. No evaluation of the evidence in light of the prevailing legal standards will support a finding of amount in controversy exceeding $10,000. Accordingly defendant's motion to dismiss for want of jurisdiction will be granted.

The clerk will notify counsel to draft and submit appropriate dismissal order.